STATE OF HAWAII, by its Director of Transportation, Plaintiff, on the relation, and for the use and benefit, of MARS CONSTRUCTORS, INC., a Hawaii corporation, Relator-Appellant, *v.* YAMADA AND SONS, INC., a Hawaii corporation, and PACIFIC INSURANCE COMPANY, LIMITED, a Hawaii corporation, Defendants-Appellees

NO. 6112

SEPTEMBER 6, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

Relator Mars Constructors, Inc. (appellant), brought this action in the name of the State pursuant to HRS § 507-17, upon a claim for materials and labor furnished under a subcontract with defendant-appellee Yamada and Sons, Inc., the general contractor with the State for the construction of the so-called Honokaa Bridge Job. An amount of $29,104.21 was

found by the trial court to be owing under the subcontract, but this amount was reduced by offsets to the sum of $5171.67, for which sum, together with interest, attorneys fees and costs, judgment was entered for appellant. The appeal presents only the question of the right of Yamada to offset $21,418.48 owed to Yamada by Martin Constructors, Inc. (Martin), which offset was allowed by the trial court. We conclude that the offset was not properly allowed.

## I.

Martin is a Washington corporation which qualified on February 17, 1964 to do business in Hawaii as a foreign corporation under the name of Diversified Constructors, Inc., then on February 25, 1964 changed its name to Mars Constructors, Inc. and on September 14, 1970 changed its name to Martin Constructors, Inc. At all.times relevant to this case, all of the stock of Martin was owned or controlled by Reed & Martin, Inc., all of whose stock was owned or controlled by Lloyd M. Martin, stepfather of Stephen J. Herbert. Appellant is a Hawaii corporation which was formed on September 29, 1970, taking the name of Mars Constructors, Inc. which Martin had relinquished some three weeks earlier. Herbert was the sole stockholder of appellant and the president of both appellant and Martin.

At the time of appellant's incorporation, Martin was engaged in the performance of construction contracts. Appellant and Martin used the same office, business location and business address. Key employees of Martin were hired by appellant but continued to work on the Martin projects. Appellant loaned $150,000 to Martin for the purpose of enabling Martin to continue work on its projects and to pay its accounts.

On June 22, 1970, when Martin had the name Mars Constructors, Inc. and before appellant's incorporation, Martin entered into a subcontract with Yamada for work to be performed by Yamada as subcontractor on the so-called Kona Housing Project. Herbert executed the subcontract for Martin as its president. Except for $43.60 owed by Martin to

Yamada on another contract, the offset in dispute in this case consists of amounts owing by Martin to Yamada on this subcontract.

On October 12, 1970, when appellant had the name Mars Constructors, Inc., Yamada entered into a subcontract with appellant for work to be performed by appellant as subcontractor on the Honokaa Bridge Job. Herbert executed the subcontract as president of appellant. Appellant's claim against Yamada arises out of this subcontract. Yamada was not aware of the change in the corporation identified by the name Mars Constructors, Inc. and believed that it was dealing with the same corporation with which it had entered into the subcontract for the Kona Housing Project.

The foregoing facts were found by the trial court and are supported by the record. Its allowance of the offset of Martin's debt to Yamada against appellant's claim against Yamada was founded by the trial court upon its conclusion that appellant and Martin conducted business as though they were a single legal entity and that their separate corporate entities should be disregarded. The trial court did not find that Yamada suffered any detriment by reason of its belief that it was dealing with the same corporation in each instance. Testimony by both Herbert and Yamada's president was to the effect that the subcontract between appellant and Yamada was unusual in that it did not provide for the retention by Yamada of any part of the contract price until completion of the contract, that a retention of 10% was customary and that the elimination of a retention was the result of discussion with Herbert. Yamada's president testified, in effect, that no retention had been provided because Yamada was a subcontractor under a subcontract with Martin as general contractor for a construction project known as the Mohouli Project. The contract between Martin and Yamada with respect to the Kona Housing Project was not mentioned in the testimony as having affected the negotiation of the subcontract for the Honokaa Bridge Job. Herbert testified that he did not think it was true that the retention was eliminated from the subcontract for the Honokaa Bridge Job for the reason stated by Yamada's president. The record shows, without dispute, that

the claims of Yamada against Martin on the Mohouli Project have been settled and satisfied, although the parties continued to pursue claims for extras against the Hawaii Housing Authority.

## II.

Thus we see appellant appropriating a corporate name which had been abandoned by Martin and thereafter conducting its business in a manner which was calculated to and did in fact lead Yamada to believe it was dealing with Martin when it entered into the subcontract with appellant for the Honokaa Bridge Job. However, except for the name, appellant did not succeed to any asset or business of Martin. No transfer of any asset having taken place, the implications of a transfer for an inadequate consideration or of a sale not in good faith are not present and the question whether the $150,000 loan made by appellant to Martin should be looked upon as consideration need not be explored. There is no evidence that the name and business identity of Martin had any value, although the inference is inescapable that Herbert anticipated some advantage in incorporating appellant under Martin's former name. There is nothing to show prejudice to any creditor of Martin as the result of the transfer of identities. Nor is there any suggestion that there was identity of ownership or interest between the two corporations. While family relationships exist between those owning or controlling the stock of the two corporations, there is nothing to show that they acted in each other's interest.

A corporation is ordinarily to be regarded as a separate entity, although under certain circumstances the corporate entity may be disregarded and a corporation may be held not to be an entity separate from its stockholders but rather an association or collection of individuals. *Kahili, Inc. v. Yamamoto,* 54 Haw. 267, 506 P.2d 9 (1973). The fact, standing alone, that two corporations bear the same name is no more the occasion for attributing the debts of one to the other than if they were two individuals. A corporation which succeeds in some manner to the assets of a predecessor corporation or

exists as a mere continuation or reincarnation of a predecessor may under some circumstances be held for the debts of the predecessor.[1] However, we are aware of no authority for that result upon the premise of the similarity of names alone, where no transfer of assets or continuation of ownership is present.

The principles of equitable estoppel may prevent a corporation which permits another to do business under a similar name from denying liability for the debts of the other. *Sheraton Corp. of America v. Kingsford Packing, Inc.*, 319 N.E.2d 852 (Ind. App. 1974). But the rule does not operate in reverse. The fact, which may be a permissible inference from the trial court's findings, that Martin permitted appellant to mislead Yamada into believing that it was dealing with Martin, might sustain a claim by Yamada against Martin but alone provides no support for a claim by Yamada against appellant. In order to sustain Yamada's attempt to impose liability upon appellant for Martin's debt, we must look to appellant's representations rather than Martin's.

We have recently declared that "[o]ne invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, and that such reliance was reasonable". *Doherty v. The Hartford Ins. Group*, 58 Haw. 570, 574 P.2d 132 (1978). The fact that appellant caused Yamada to believe that it was dealing with Martin thus can give rise to a liability of appellant for Martin's debts, under the doctrine of equitable

---

[1] The general rule seems to be that where a corporation sells or otherwise transfers all of its assets, its transferee is not necessarily liable for the debts and liabilities of the transferor. Under some circumstances, the transferee may be held liable for the debts of the transferor, to wit: (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, as where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.
Annotation: Similarity Of Ownership Or Control As Basis For Charging Corporation Acquiring Assets Of Another With Liability For Former Owner's Debts, 49 A.L.R.3d 881, 883 (1973).

estoppel, only if detrimental reliance by Yamada is shown. Evidence was presented from which the trial court might have found that Yamada failed to provide a retention clause in the Honokaa Bridge subcontract because it was engaged in performance of other work for Martin which Yamada assumed would give rise to offsetting claims. But detriment has not been suffered by Yamada by reason of the omission of a retention clause. It is not disputed that appellant has fully performed the subcontract under which it claims. A contract clause entitling Yamada to withhold a sum until completion of appellant's performance of the subcontract would thus no longer justify any retention and would have no relevance to the right of Yamada to the claimed offset. No detriment to Yamada from its dealings with appellant appears from the record other than the omission of the now irrelevant retention clause. The critical fact is that Yamada's relations with Martin, out of which the unpaid debt arose, were wholly unaffected by Yamada's mistaken belief that it was dealing with Martin when it contracted with appellant.

The absence of any finding, and of any evidence which would support a finding, of detrimental reliance by Yamada is fatal to Yamada's contentions here. No ground appears for ignoring the separate identities of appellant and Martin, or for estopping appellant from asserting their separate identities. The conduct of appellant in misleading those with which it did business as to its identity with Martin should not be condoned, but it did not have the effect claimed for it in this case.

The judgment is vacated and the case is remanded with instructions to enter judgment in accordance with this opinion.

*Asa M. Akinaka* for relator-appellant.

*Mamoru Shimokusu (Kushi, Shimokusu & Kushi* of counsel) for defendants-appellees.