Deronda SHEPPARD, et al., Plaintiffs,

v.

A.C. AND S. CO., INC., et al., Defendants.

Earl R. NUTT, et al., Plaintiffs,

v.

A.C. AND S. CO., INC., et al., Defendants.

George RICKARDS, et al., Plaintiffs,

v.

A.C. AND S. CO., INC., et al., Defendants.

Raymond GEORGE, et al., Plaintiffs,

v.

A.C. AND S. CO., INC., et al., Defendants.

Louis N. MANCARI, et al., Plaintiffs,

v.

A.C. AND S. CO., INC., et al., Defendants.

Roberta MURPHY, et al., Plaintiffs,

v.

A.C. AND S. CO., INC., et al., Defendants.

Kevin SHEWBROOKS and Anna Mae Shewbrooks, his wife, Plaintiffs,

v.

A.C. AND S. CO., INC., et al., Defendants.

Mary Emma CLARK, individually and as Executrix of the Estate of Charles Robert Clark, deceased, Plaintiff,

v.

A.C. AND S. CO., INC., et al., Defendants.

Nicholas KORECKI and May Korecki, his wife, Plaintiffs,

v.

A.C. AND S. CO., INC., et al., Defendants.

**522**

Kenneth STAGG, Plaintiff,

v.

A.C. AND S. CO., INC., et al.,
Defendants.

Venie R. LLOYD, Individually and as Executrix of the Estate of Harold C. Lloyd, Plaintiff,

v.

A.C. AND S. CO., INC., et al.,
Defendants.

Janet C. LEE, Individually and as Administratrix of the Estate of Nelson L. Lee, deceased, Plaintiff,

v.

A.C. AND S. CO., INC., et al.,
Defendants.

Randolph W. PANNELL, et al., Plaintiffs,

v.

ASBESTOS CORPORATION OF AMERICA, INC., et al.,
Defendants.

Charles MERGENTHALER, et al., Plaintiffs,

v.

ASBESTOS CORPORATION OF AMERICA, INC., et al.,
Defendants.

Robert LOGAN, et al., Plaintiffs,

v.

ASBESTOS CORPORATION OF AMERICA, INC., et al.,
Defendants.

Dominic A. MUZZI, et ux., Plaintiffs,

v.

A.C. AND S. CO., INC., et al.,
Defendants.

Douglas DEHART, et al., Plaintiffs,

v.

A.C. AND S. CO., INC., et al.,
Defendants.

Anna Z. MILLARD, Individually and as Administratrix of the Estate of John W. Millard, deceased, Plaintiff,

v.

A.C. AND S. CO., INC., et al.,
Defendants.

Charles H. SMITH, et ux., Plaintiffs,

v.

A.C. AND S. CO., INC., et al.,
Defendants.

Edna WASEILEWSKI, as Administratrix for the Estate of George D. Wilhelm, deceased, Plaintiff,

v.

A.C. AND S. CO., INC., et al.,
Defendants.

Donald E. MCDANIEL, et ux., Plaintiffs,

v.

ASBESTOS CORPORATION OF AMERICA, INC., et al.,
Defendants.

Superior Court of Delaware,
New Castle County.

Submitted: May 21, 1984.
Decided: Sept. 13, 1984.

See also Del., 480 A.2d 647.

Robert Jacobs of Jacobs & Crumplar, Wilmington, for plaintiffs.

Douglas B. Catts of Schmittinger & Rodriguez, Dover, for defendants.

WALSH, Vice Chancellor.[*]

In these asbestos actions, consolidated for the purpose of determining a common issue, one of the defendants, Celotex Corporation ("Celotex"), seeks partial summary judgment on the ground that it is not liable for the punitive damage claims asserted by plaintiffs. In effect, Celotex contends that since the claims of the various plaintiffs arise from contact with asbestos products manufactured or distributed by its predecessor companies, Celotex, as a matter of law and public policy, cannot be assessed punitive damages merely by reason of successive ownership. Plaintiffs counter that there are material factual disputes concerning Celotex's links to its predecessor's tortious practices which preclude the grant of partial summary judgment.

The factual background upon which Celotex's motion for partial summary judgment must be decided is gathered from the pleadings and limited discovery. Where inferences are to be drawn plaintiffs as the non-movants are afforded the benefit. Celotex's entry into the asbestos field began with its acquisition in 1972 of Panacon Corporation ("Panacon"). Panacon had been formed in 1970 through the merger of Philip Carey Corporation and Briggs Manufacturing Corporation. Philip Carey, in particular, had been active in the manufacturing and mining of asbestos products for many years. Celotex's acquisition of Panacon occurred through the initial purchase of 75 percent of Panacon's shares from Glen Alden Corporation followed by the eventual cashing out of other smaller shareholders. No shares were exchanged and no share-

[*] Assigned Pursuant to *Del. Const.* Art. IV § 13(2).

holder of Panacon became a shareholder of Celotex. The merger of Panacon into Celotex became effective on June 28, 1972. Celotex itself is a wholly owned subsidiary of Jim Walter Corporation. As a result of these transactions, Celotex became the successor to Panacon and its predecessors who had previously been engaged in the manufacture and distribution of various asbestos products some of which allegedly caused harm to the various plaintiffs.

Prior to its purchase of Panacon, Celotex had not been engaged in the manufacture or sale of asbestos products. After the merger it continued to distribute the small remaining line of such products under the same brand names but with warning labels attached. Panacon's notice to minority stockholders, made in connection with the cash-out offer when it was controlled by Celotex, described Panacon's primary activities as the manufacture and sale of products used in the building construction industry and "the mining and milling of asbestos fibres, substantially all of which are used in the manufacture of products for the building construction industry by Panacon and by others." Among other assets acquired by Celotex through the Panacon merger were large asbestos deposits in Canadian mines totalling more than 68 million tons of asbestos bearing material.

In addition to the acquisition of asbestos producing assets and product markets, Celotex also retained certain of Panacon's employees who had been involved for several years in the manufacture and sales of asbestos related building products. There is a strong suggestion that at least one of these individuals, L.A. Pechstein, Jr., a corporate officer of Panacon and later of Celotex was knowledgeable of asbestos hazards as early as 1963.

Celotex does not seek, in the present motion, a determination of its responsibility for plaintiffs' claims of general compensatory damages on the theory of successor liability, although it reserves the right to assert such a defense. The focus then is upon the general question of whether a successor corporation may be required to respond to a claim for punitive damages arising out of the acts of its predecessor which it did not expressly ratify or adopt. The further question posed is whether, in the present factual context, Celotex has demonstrated its entitlement to summary judgment under its claim of successor immunity.

Apart from the argument that there is simply no legal tie between the tortious acts of Panacon and its corporate structure, Celotex maintains that the policy considerations which traditionally underlie the award of punitive damages find no application in successor corporate situations. Those concerns—deterrence and punishment of a wrongdoer—lack justification, the argument runs, where there is no identity or commonality of interest between the successive corporate entities.

 Exemplary or punitive damages are awarded to punish a tortfeasor for willful or reckless conduct which is particularly reprehensible. *Riegel v. Aastad*, Del. Supr., 272 A.2d 715 (1970). Although no mathematical formula governs the award of such damages, they must not be disproportionate to compensatory damages attributable to the same conduct. *Malcolm v. Little*, Del.Supr., 295 A.2d 711 (1972). A recognized purpose in the awarding of punitive damages is to deter the tortfeasor "and others like him from similar conduct in the future." *Restatement of Torts*, 2d § 908(1).

Although as previously noted, Celotex does not presently question its duty to respond generally for the tortious conduct of Panacon and Philip Carey, the justification for such liability is instructive. The question of successor liability for torts apparently has not been directly considered in Delaware. The issue was obliquely addressed in *Fehl v. S.W.C. Corp.*, D.Del., 433 F.Supp. 939 (1977). Chief Judge Wright considered whether the purchase of assets from an alleged tortfeasor would render the purchaser subject to jurisdiction under Delaware's Long Arm Statute (8

*Del.C.* § 382). He noted the growing tendency, particularly in product liability cases, to view the sale of assets accompanied by the continuation of the predecessor's business as a *de facto* merger. See, *Cyr v. B. Offen & Co., Inc.*, 1st Cir., 501 F.2d 1145 (1974) (applying New Hampshire law), *Knapp v. North American Rockwell Corp.*, 3d Cir., 506 F.2d 361 (1974) (applying Pennsylvania law).

It would appear, *a fortiori*, that where the transfer of assets and continuation of the product line results not from a mere sale of assets but through the formality of a *de jure* merger, the considerations which support successor liability are of even greater force. Indeed, this is the general effect of mergers accomplished by statute. 8 *Del.C.* § 259; *Fletcher Cyc. Corp.*, § 7121 (Perm.Ed.). And while statutory standards are generally applied for the protection of creditors of the predecessor entity, the rule also has been extended to tort claims on a variety of policy arguments. See, *Ramirez v. Amsted Industries, Inc.*, N.J.Supr., 86 N.J. 332, 431 A.2d 811 (1981); *Dawejko v. Jorgensen Steel Co.*, Pa.Super., 290 Pa.Super. 15, 434 A.2d 106 (1981).

Celotex argues that plaintiffs who claim punitive damages from successor corporations are not genuine creditors, for whose protection the principle of successor liability has evolved, but are rather seeking a windfall in excess of reasonable compensation. Moreover, it is argued, the allowance of such windfalls may jeopardize the ability of other injured parties to receive general compensation. Conflicting views on the liability of a successor corporation for punitive damages have been expressed in other jurisdictions. Two of the cases, both involving Celotex, are illustrative.

Celotex's argument urging rejection of punitive damages was upheld in *In Re Related Asbestos Cases*, N.D.Cal., 566 F.Supp. 818 (1983). A Federal District Court, applying what it predicted would be California law, held that successor liability did not include punitive damages under the circumstances there presented. After evaluating some of the same facts which are in the discovery record in this case concerning the relationship between Celotex and Panacon's predecessor, Philip Carey, in the merger transaction, the Court concluded that the lack of commonality in ownership precluded the concept that Celotex should be required to respond to claims based on its predecessor's outrageous conduct. Although the Court viewed the evidence of the continued employment of certain Panacon employees as not significant because of the change in shareholder identity, the Court did not consider the significance of product continuation. Indeed, the Court noted that plaintiffs' "plan" or "substantial hope" to produce such evidence was not sufficient to forestall summary judgment. *Id.*, at 823.

It is important to note that under California law the amount awarded for punitive damages need not be related to the amount of compensatory damages. The Court deemed this significant in considering whether the successor corporation ran the risk of bankruptcy in products liability cases. In Delaware, the magnitude of that risk is considerably reduced because of the requirement that the amount of the punitive award must be reasonably related to the circumstances, *Guthridge v. Pen-Mod, Inc.*, Del.Super., 239 A.2d 709 (1967) and to the amount of compensatory damages, *Malcolm, supra.*

A different view of Celotex's responsibility was taken by the Pennsylvania Superior Court in *Martin v. Johns-Manville Corp.*, Pa.Super., 322 Pa.Super. 348, 469 A.2d 655 (1983). After considering the relationship between Celotex and Philip Carey, the Court upheld an award of punitive damages entered at the trial level against Celotex and other asbestos suppliers. While acknowledging that the imposition of punitive damages on the successor makes little sense where it does not share officers, directors or shareholders with the predecessor, the Court noted that "in some circumstances a successor should be held accountable for the recklessness of its predeces-

sor" (469 A.2d 667). The *Martin* court believed that such a sanction would be appropriate where the policy goals which underlie punitive damages—punishment and deterrence—would be advanced. In language which tracks the Restatement standard the Court concluded:

> We therefore hold that punitive damages are recoverable against a successor corporation when the plaintiff has shown such a degree of identity of the successor with its predecessor as to justify the conclusion that those responsible for the reckless conduct of the predecessor will be punished, and the successor will be deterred from similar conduct. (469 A.2d at 667)

Other decisions involving Celotex also have resulted in the allowance of punitive damages for the direct acts of the predecessor on the basis of general deterrence. *Hanlon v. Johns-Manville Sales Corporation, et al.*, 599 F.Supp. 376, D.C. N.D. Ia., Order Feb. 17, 1984, Asbestos Litigation Reporter p. 7894 (applying Iowa law); *Froud v. Celotex Corp.*, Ill.App., 107 Ill. App.3d 654, 63 Ill.Dec. 261, 437 N.E.2d 910 (1982); *Neal v. Carey Canadian Mines, Ltd.*, E.D.Pa., 548 F.Supp. 357 (1982) (applying Pennsylvania law).

As the decisional law teaches, each case of successor liability must turn on its particular facts. Although one Court, in the context of California law, has viewed the Celotex-Panacon merger differently, other courts appear to have permitted the imposition of punitive damages on Celotex, as the successor to the entity which actually caused the harm, on the theory of deterrence. Admittedly, the facts now before this Court do not show a broad and continuous corporate connection in terms of officers, directors or shareholders. But in the context of summary judgment and affording plaintiffs the benefit of disputed inferences there is a showing that certain officers and employees of Panacon and Philip Carey who were engaged in the distribution of asbestos products were continued in that capacity by Celotex after the merger. More importantly, Celotex continued the asbestos product line it acquired through the merger. While it added warning labels to some of those products, the record is simply insufficient to test the adequacy of such warnings and neither party has attempted to supplement the record in that regard. If, as the decisions indicate, deterrence is a policy goal supporting the allowance of punitive damages, the continuation by a successor of a product line with knowledge of its danger (as suggested by the affixing of warning labels) could be a reprehensible act properly discouraged through the imposition of punitive damages.

▆▆▆▆ In denying Celotex's motion for summary judgment it should be emphasized that this Court does not conclude that ultimately an award of punitive damages will be sustainable at trial. Punitive damages, in products liability cases, are assessable only for outrageous conduct and even in jurisdictions which recognize strict liability an additional showing of aggravated conduct is required. *Neal v. Carey Canadian Mines, Ltd., supra.* In view of the current uncertain view of strict liability in this State,[1] a strong factual predicate for compensatory damages must first be established in a products liability case before the question of punitive damages is considered. But if it be assumed, as Celotex tacitly does, that both compensatory and punitive damages would be recoverable for the direct acts of its predecessor companies, material issues of fact exist concerning Celotex's continuation of the harm-causing product line and the retention of personnel involved in the manufacture and distribution of those products so as to preclude a ruling of law that it is not subject to puni-

---

**1.** Although *Cline v. Prowler Industries of Md., Inc.*, Del.Supr., 418 A.2d 968 (1980) appears to foreclose recovery on the basis of strict liability in personal injury claims arising out of the sales of goods, it is uncertain whether the asbestos plaintiffs would be deemed "consumers" or "bystanders." Cf. *Martin v. Ryder Truck Rental, Inc.*, Del.Supr., 353 A.2d 581 (1976).

tive damages. Accordingly, its motion for summary judgment must be denied.

IT IS SO ORDERED.