Edward F. KRULL, Plaintiff,

v.

CELOTEX CORPORATION, et al., Defendants.

No. 83 C 9835.

United States District Court, N.D. Illinois, E.D.

May 31, 1985.

Terrence M. Johnson, Chicago, Ill., for plaintiff.

Michael P. Connelly, Connelly, Ruberry & Mustes, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Edward F. Krull ("Krull") initially filed this action seeking both compensatory and punitive damages from The Celotex Corporation ("Celotex") and others as a result of his having contracted pleural mesothelioma after exposure to insulating materials containing asbestos.[1] On the eve of trial Celotex moved for partial summary judgment on the issue of its liability for punitive damages. For the reasons stated in this memorandum opinion and order, this Court has denied the motion.[2]

### Facts

All facts material to Celotex's motion are both uncomplicated and undisputed. Phillip Carey Corporation ("Carey") was for many years active in the manufacture of the type of asbestos products to which Krull was allegedly exposed. In April 1970 Carey merged with Briggs Manufacturing Co. to form the Panacon Corporation ("Panacon"), a Michigan corporation. Panacon continued Carey's asbestos manufacturing and mining operations. In June 1972 Panacon was in turn merged into Celotex, a Delaware corporation.

Celotex had not been involved in the mining or manufacture of asbestos products before the Panacon merger. After the merger Celotex both (1) placed warning labels on all asbestos-containing products and (2) restricted its asbestos products sales primarily to products used in manufacturing processes rather than the insulating products to which Krull was exposed.

### Celotex's Status As a Successor Corporation

Celotex Motion for Summary Judgment ¶ 3 argues Krull's claim for punitive damages is "solely predicated upon the alleged misconduct of Phillip Carey Corporation." Celotex urges the unfairness of saddling it with such punitive damages because it (*id.* ¶ 4):

> never participated in or ratified any of the allegedly wrongful acts committed by either the Phillip Carey Corporation or the Panacon Corporation.

Celotex's emphasis on its *own* conduct is misplaced. That error reflects the fundamental flaw in Celotex's analysis: its failure to distinguish between the liability of a successor corporation by *merger* from the very different situation that has generated most "successor corporation" litigation in the products liability field.

Celotex argues as if it had simply bought Carey's (or Panacon's) business assets without an express assumption of liabilities. Rules of law dealing with that common kind of acquisition have, in recent years, been in a state of flux. Several jurisdictions have made the policy determination that an asset purchaser may nonetheless be saddled with liability for the predecessor manufacturer's torts. See, e.g., *In re Related Asbestos Cases*, 566 F.Supp. 818, 821–22 (N.D.Cal.1983). But the general rule in such cases remains that, subject to certain exceptions, the asset-acquiring company is not liable for the debts and liabilities of the seller. *Manh Hung Nguyen v. Johnson Machine & Press*

---

1. Krull had worked as an insulator for some 25 years, with the disease having manifested itself after his retirement. He died of mesothelioma earlier this year, and before the commencement of trial earlier this month his three children (co-executors of his estate) were substituted as plaintiffs.

2. This Court summarized its reasons for denial in an oral bench ruling promptly after the motion was filed. Because the issue is a recurring one in the thousands of asbestos-related-disease cases pending throughout the country against Celotex (and others), it seemed appropriate to expand the ruling into this written opinion.

*Corp.*, 104 Ill.App.3d 1141, 1143, 60 Ill.Dec. 866, 868, 433 N.E.2d 1104, 1106 (1st Dist. 1982).

■ But the Celotex-Panacon transaction was a *merger*, not merely a purchase of assets. And the universal rule applicable to mergers or consolidations is that, by operation of law, the successor corporation assumes all debts and liabilities of the predecessor corporation precisely as if it had incurred those liabilities itself. *Hanlon v. Johns-Manville Sales Corp.*, 599 F.Supp. 376, 378 (N.D.Iowa 1984) (applying Iowa law); *Moe v. Transamerica Title Insurance Co.*, 21 Cal.App.3d 289, 304–05, 98 Cal.Rptr. 547, 556–57 (1971); *Nguyen*, 104 Ill.App.3d at 1143, 60 Ill.Dec. at 868, 433 N.E.2d at 1106.

■ That rule is inherent in the concept of a merger, under which the surviving corporation stands in the shoes of the disappearing corporation in every respect. And that concept is uniformly codified in every merger statute, including the Delaware General Corporation Law under which the Celotex-Panacon merger was accomplished.[3] Del.Code Ann. tit. 8, § 259(a) specifically provides:

> When any merger or consolidation shall have become effective under this chapter, for all purposes of the laws of this State the separate existence of all the constituent corporations, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged, as the case may be, shall cease and the constituent corporations shall become a new corporation, or be merged into one of such corporations, as the case may be, possessing all the rights, privileges, powers and franchises as well of a public as of a private nature, and being subject to all the restrictions, disabilities and duties of each of such corporations so merged or consolidated ... and all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it.

Indeed, Section 11 of the Celotex-Panacon merger agreement has been reported in *Hanlon*, 599 F.Supp. at 378 as expressly tracking the language of the statute:

> [A]ll debts, liabilities and duties of Panacon shall upon the effective date of the merger attach to Celotex and may be enforced against it to the same extent as if such debt, liabilities and duties had been incurred or contracted by Celotex.

And of course "liabilities" and "duties" extend to contingent liabilities such as tort claims.

Celotex's presentation to this Court never acknowledged the existence of the quoted statute or adverted to Celotex's unconditional obligation under the merger agreement to shoulder all of Panacon's liabilities. Instead, Celotex Mem. 12 has misleadingly argued:

> Other jurisdictions, which have litigated the issue of a successor corporation's liability for punitive damages, have consistently held successor corporations not to be liable on the sole basis of their relationship to the predecessor corporation.

In support of that contention Celotex cites three cases that never even discuss the merger issue:

---

3. Perhaps more accurately, where two corporations organized in different jurisdictions merge, the corporate laws of both jurisdictions must be satisfied to consummate the merger. However the law of the place of incorporation of the survivor defines the extent to which that corporation takes the position of the disappearing corporation cum onere (though if the law applicable to the surviving corporation purported to extinguish liabilities that the law applicable to the disappearing corporation would have preserved, the creditors involved might have an impairment-of-contracts constitutional claim). If there were any question on that score, it is mooted by the fact the Michigan corporate law (where Panacon was organized) contains a provision with different language from, but identical impact to, that of the Delaware statute quoted in the text. Michigan Comp. Laws § 450.59.

1. *Drayton v. Jiffee Chemical Corp.,* 395 F.Supp. 1081, 1097–98, *modified and aff'd,* 591 F.2d 352 (6th Cir.1978) (no indication whether acquisition involved a purchase of assets or a merger);

2. *Chapin v. Celotex,* No. 579–0272(N) (S.D.Miss. Jan. 30, 1984) (analyzing the Celotex-Panacon merger as if it were a mere purchase of assets);[4] and

3. *In re Related Asbestos Cases,* 566 F.Supp. 818 (N.D.Cal.1983).

Contrary to Celotex's representation, numerous decisions in other jurisdictions have held Celotex liable in asbestos cases for punitive damages occasioned by the conduct of its merged-out predecessors. See *Hanlon,* 599 F.Supp. at 378–79; *Sheppard v. A.C. and S. Co.,* 484 A.2d 521, 524–26 (Del.Super.Ct.1984) and cases there cited. As n. 3 reflects, Delaware (where *Sheppard* was decided) is the controlling jurisdiction for these purposes.[5] And that renders especially disturbing Celotex's failure to have apprised this Court of those adverse decisions (particularly *Sheppard*).[6]

■ Corporations are largely the molders of their own destinies in acquisition transactions: They may buy assets without assuming liabilities, they may buy stock and preserve the acquired company as a subsidiary (insulating the parent from subsidiary liabilities), they may engage in upstream or downstream mergers, they may consolidate—there is no need to ring all the changes with which a knowledgeable corporate practitioner is familiar. In the products liability area some imaginative courts have begun to circumscribe the conventional corporate law effects of some of those acquisition methods, looking through the transactions to impose "successor" liability (the "de facto merger" notion is such a device). But if an acquiring corporation—for its own business (and perhaps tax) purposes—*chooses* a formal de jure merger, with its familiar consequences of the total assumption of predecessor liabilities, the corporation will not be heard to extract itself from its wholly voluntary and deliberately undertaken actions.

### Conclusion

■ Under the terms of the merger agreement and the Delaware General Corporation Law, Celotex unconditionally assumed all debts and liabilities of Panacon. Celotex has presented this Court with no authority for treating punitive damages differently from any other liability. Celotex's motion for summary judgment as to punitive damages is therefore denied.[7]

**4.** This Court has no way of knowing whether the District Judge in *Chapin* was the victim of the same kind of misleading presentation as that tendered here. If not—if the true issue was perceived but not found persuasive in *Chapin*—this Court simply disagrees with the result reached there.

**5.** Celotex argues Illinois law controls its liability for punitive damages. But Illinois law actually governs only *Panacon*'s or *Carey*'s liability for punitive damages. Except for the moot possibility dealt with in n. 3, Delaware law plainly governs the only issue relevant here: which of Panacon's liabilities became Celotex's obligations by virtue of the merger agreement. As to such questions Illinois courts (and hence this Court in a diversity action) would look not to Illinois substantive law, but to the law of the place of incorporation. And if it were relevant (as it is not), Illinois' own substantive corporate law (both statutory and case law) follows Delaware in requiring the surviving corporation to assume all liabilities of the corporation extinguished in the merger. Ill.Rev.Stat. ch. 32,
§ 157.69(e); *Manh Hung Nguyen,* 104 Ill.App.3d at 1143, 60 Ill.Dec. at 868, 433 N.E.2d at 1106.

**6.** That omission raises concerns about Celotex's compliance with its duty of candor to the court set out in Ethical Consideration 7–23 of the ABA Model Code of Professional Responsibility:

> Where a lawyer knows of legal authority in the controlling jurisdiction directly adverse to the position of his client, he should inform the tribunal of its existence unless his adversary has done so; but having made such disclosure, he may challenge its soundness in whole or in part.

More recently that duty has been built directly into Rule 3.3(a)(3) of the new ABA Model Rules of Professional Conduct. And this is not simply the nondisclosure of a case arguably on point—it is a case squarely on point in which the same litigant was the loser.

**7.** Because the parties settled this case after this ruling and after trial had begun (or more accurately after the jury had been chosen), this opinion need not address such other issues as the

propriety (or constitutionality) of punitive damage awards in mass tort litigation. See, e.g., Sullivan, *Multiple Punitive Awards in Huge Cases Pose Risks,* National Law Journal, June 3, 1985, at 15 col. 1.