**Ah You MAN, Harry N. Sato,
Plaintiffs,**

v.

**RAYMARK INDUSTRIES, et
al., Defendants.**

Nos. 87–14524, 87–14470.

United States District Court,
D. Hawaii.

Nov. 21, 1989.

George W. Playdon, Theodore Y. Uyeno, Robert B. Frija, Honolulu, Hawaii, for plaintiffs.

Sterns & Ingram, Honolulu, Hawaii, for defendants.

## ORDER RE: PUNITIVE DAMAGES

CONTI, District Judge.

The plaintiffs in these cases seek compensatory and punitive damages for injuries allegedly caused by exposure to defendants' asbestos-containing insulation products. The matter is now before the court on defendant Celotex Corporation and defendant Carey Canada, Inc.'s motion for summary judgment as to plaintiffs' punitive damage claims.

Defendants assert two theories in support of their motion: (1) Punitive damages are violative of the Due Process clause of the Constitution and therefore may not be allowed as a matter of law; and (2) Punitive damages may not be assessed against a so-called "successor" corporation, such as Celotex, if those damages arise from the conduct of a "predecessor" corporation, as Celotex asserts is the case here.

## I. CONSTITUTIONALITY OF PUNITIVE DAMAGES

Defendants argue that punitive damages violate the Due Process clause in two ways: First they claim juries are free to impose punitive damage awards without meaningful standards; second, multiple punitive damage awards in the mass tort context are "arbitrary" and unfair. Although arguments for abolishing punitive damages in the mass tort context have been rejected in almost every jurisdiction in which they have been raised,[1] defendants assert the court should look at these arguments anew in light of dictum found in a recent Su-

---

1. *See,* e.g., *Wammock v. Celotex,* 835 F.2d 818 (11th Cir.1987); *Jackson v. Johns–Manville Sales Corporation,* 727 F.2d 506, 750 F.2d 1314 (rehearing en banc), *question certified,* 757 F.2d 614, *affirmed* 781 F.2d 394 (5th Cir.1986); *Hansen v. Johns Manville,* 734 F.2d 1036 (5th Cir. 1984); *Leonen v. Johns Manville Products Corporation,* 717 F.Supp. 272 (D.N.J.1989); *Cambell v.*

*Acand Inc.,* 704 F.Supp. 1020 (D.Mont.1989); *Neal v. Carey Canadian Mines, Ltd.,* 548 F.Supp. 357 (E.D.Pa.1982), *aff'd* 760 F.2d 481 (3d Cir. 1985). *Compare, Sanford v. Celotex Corporation,* 598 F.Supp. 529 (M.D.Tenn.1984); *Kreger v. Celotex Corp.,* No. 87 Civ. 4276 (S.D.N.Y. March 2, 1989).

preme Court opinion, *Browning Ferris Industries v. Kelco Disposal Inc.,* — U.S. —, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989).

### 1. *The Browning–Ferris Opinion*

■ *Browning Ferris* was a case of unfair competition. The jury returned a verdict of $51,146 in compensatory damages and $6 million in punitive damages. The defendants, characterizing the punitive damages as excessive, sought to have the award declared unconstitutional as violative of the Excessive Fines Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. The Court however held that the Excessive Fines Clause did not apply to civil cases and could not be used to upset the verdict. The court then refused to consider defendants' due process argument on the grounds that defendants were raising it for the first time, stating:

> [W]e have never addressed the precise question presented here: whether due process acts as a check on undue jury discretion to award punitive damages in the absence of any express statutory limit.... That inquiry must await another day.

*Id.* 109 S.Ct. at 2921.

Justice Brennan, with whom Justice Marshall concurred, agreed with the majority, that the question of due process was not properly before the court, but also gave indications that he believed that the court possessed the power to review such an award on due process grounds. According to Brennan, the common law set no specific range for the imposition of punitive damages but instead left it to the jury's discretion. Brennan then noted that "even where a statute sets a range of possible civil damages that may be awarded to a private litigant, the Due Process Clause forbids damages awards that are 'grossly

excessive" [citation omitted] or 'so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable.'" *Id.* at 2293. Brennan concluded that punitive damages awards which were not based upon a strict legislative scheme, but were instead left to a jury's discretion, should require at least the same, if not a higher level of scrutiny for excessiveness. *Id.*

Nothing in the *Browning–Ferris* opinion thus gives any indication that punitive damages are always invalid. In fact the Court implicitly indicated that the opposite is true as its concern was that courts, when dealing with damages already *awarded* under the common law, must carefully scrutinize the awards for excessiveness. In sum, this court does not find that the Supreme Court has given any indication that punitive damages are unconstitutional as a matter of law and this court will not extract such a doctrine from defendants' inaccurate interpretation of Court dicta.[2]

### 2. *Meaningful Standards Exist for Imposing Punitive Damages*

Despite a lack of precedent, defendants claim that "unlimited discretion" is given to Hawaii juries in imposing punitive damages and that such discretion is unconstitutional. This court disagrees as to defendants' interpretation of both Hawaii and federal law.

■ In Hawaii punitive damages may be awarded only in cases where the wrongdoer has acted wantonly, oppressively, or with such malice as implies spirit of mischief or criminal indifference to civil obligations, or where there has been such willful misconduct or entire want of care as would raise presumption of conscious indifference to consequences. *Quedding v. Arisumi Brothers, Inc.,* 66 Hawaii 335, 240, 661 P.2d 706, 710 (1983); *Kang v. Harrington,* 59 Hawaii 652, 660–661, 587 P.2d 285,

---

**2.** Similarly Justice O'Connor, in a dissenting opinion in *Bankers Life and Casualty Co. v. Crenshaw,* 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988), wrote that punitive damage awards may touch on due process concerns. There was no indication that such awards are unconstitutional as a matter of law. This court

also notes that the Court has recently refused *certiorari* on a due process challenge to a punitive award, thus there is no reason to assume the Court considers the issue to be pressing. *Volkswagen of America v. Gibbs,* — U.S. —, 110 S.Ct. 418, 107 L.Ed.2d 382 (1989).

293 (1978). The proper measure of damages is based upon the degree of malice, oppression or gross negligence which forms the basis for the award and the amount of money required to punish the defendant, considering his financial condition. *Kang,* 59 Hawaii at 652, 587 P.2d 285; *Howell v. Associated Hotels, Ltd.,* 40 Hawaii 492, 501 (1954). Moreover claims for punitive damages must be proven by "clear and convincing evidence." *Masaki v. General Motors Corporation,* 780 P.2d 566, 575 (September 20, 1989).

■ Defendants state that these requirements are inadequate because a punitive damage claim is criminal or penal in nature, therefore the requirements and safeguards granted in criminal cases, such as the prohibition against double jeopardy and the necessity of proof beyond a reasonable doubt must apply. However since a punitive damage claim does *not* serve the purpose of determining whether the criminal law has been violated, does *not* carry the consequence of possible incarceration or the stigma inherent in a determination of a criminal violation, and is *not* a claim backed by the resources of the State, it is not "criminal" or "penal" in nature. *See Hansen v. Johns Manville Products Corp.,* 734 F.2d 1036, 1042 (5th Cir.1984), *cert. denied* 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985).[3] Therefore comparisons with criminal law are irrelevant.

In fact the adequacy of Hawaii law is made abundantly clear by comparison to the Supreme Court's own formulations of the punitive damage standard as it relates to both federal causes of action and constitutional rights. In *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), a § 1983 defendant challenged the propriety of a punitive damage award grounded on a "recklessness or callous indifference" standard as being too vague to fairly achieve the goal of deterrence. The Supreme Court rejected the defendant's ar-

guments noting that the "recklessness" standard was adopted for the very reason that it satisfied the need for clarity and fairness in the awarding of punitive damages. *Id.* at 49, 103 S.Ct. at 1636. Similarly, in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974) the Court stated that punitive damages may not be assessed in a defamation suit unless there is a showing of knowledge of falsity or reckless disregard for the truth. *See Leonen v. Johns–Manville, Corp.,* 717 F.Supp. 272, 280 (D.N.J. 1989).

■ This court finds that the standard established by Hawaii law is sufficient to apprise potential defendants and juries of both the nature of the conduct which may expose one to punitive damage liability as well as what level of award is appropriate under the circumstances. Moreover due process is further guaranteed as, if a jury does award such damages, the court may, pursuant to a proper motion, examine the award. Thus there is no constitutional violation in the application of Hawaii law in imposing punitive damage liability. *See Vollert v. Summa Corp.,* 389 F.Supp. 1348, 1350 (D.Hawaii 1975).

### 3. *Punitive Damages are Appropriate in the Mass Tort Context*

■ Defendants also argue that multiple awards of punitive damages, in the mass tort context, violate the fundamental fairness concerns of the Due Process Clause as defendants are being destructively subjected to multiple awards for what they describe as a "single course of conduct." As defendants state that punitive damages have already been assessed against it, defendants assert that no purpose is served by additional punitive damage awards. This court however disagrees with defendants' analysis of the facts, the law, and applicable public policy.[4]

---

**3.** Moreover this court notes that, in *United States v. Halper,* the Supreme Court specifically stated that protections of the Double Jeopardy Clause are not triggered by litigation between private parties. 490 U.S. ——, 109 S.Ct. 1892, 1903, 104 L.Ed.2d 487.

**4.** The court again notes that no punitive award has been granted in this case, thus any talk of the "ruinous" consequences of another punitive award is speculative and premature. Furthermore there is no evidence before the court that Celotex has suffered any such "ruinous" conse-

To begin defendants describe their acts as a "single course of conduct", as if they are being subjected to multiple liability for a single incident. That is not the case. Defendants in the asbestos litigation are not being repeatedly punished for a single act, rather punitive awards stem from an alleged *series* of corporate actions and decisions over decades involving repeated willful failure to warn, despite concrete knowledge of product dangers. At any juncture of time defendants allegedly had the opportunity to have saved lives by changing their behavior. *See* Plaintiff's Memorandum of Opposition at pp. 20–30.

And as one court has stated:

"[S]ince a product seller owes a separate duty to each individual who is a ... user of such a product to refrain from 'outrageous conduct' and, if the defendant exhibits 'outrageous conduct' towards a particular individual through deficiencies in that product which causes injury to that plaintiff, then its course of conduct cannot be described as 'the same act' because it is separate and distinct to each individual plaintiff."

*Neal v. Carey Canadian Mines, Ltd.*, 548 F.Supp. 357, 377–378, *aff'd Van Burskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481 (3d Cir.1985).

This court is not aware of any Hawaii case which states that a manufacturer owes a duty not to engage in any outrageous behavior only to the first plaintiffs who happen to sue him. In fact the policy in Hawaii is that "the public interest in human life and safety requires the maximum possible protection the law can muster against defects in products." *Stewart v. Budget Rent–A–Car, Corp.*, 52 Hawaii 71, 74, 470 P.2d 240 (1970). Punitive damages are certainly part of that protection and this court will not whitewash the alleged behavior of defendants by characterizing it as a "single course of conduct." [5]

Secondly, even if this court were to accept the theory that defendants committed a single bad *act*, fairness concerns could only be implicated if the first jury to impose punitive damages awarded the damages for the *full extent* of the defendants' misconduct. In the present case there is no evidence before this court that the juries, in the cases where punitive damages have been imposed against the defendants, awarded those damages for the full extent of defendants' allegedly outrageous and repetitive behavior. In other words the defendants' "fairness" argument is based on speculation, not fact.

As to defendants' policy arguments, i.e. "multiple punitive damage awards do not serve the goals of deterrence or effective punishment", this court must first state that it would be manifestly improper for any court to unilaterally legislate away established rights and procedures based upon such an interpretation of public policy goals. Only a legislature is in the position to weigh whether the deterrent effect of punitive damages is effective in mass tort litigation and, if they determine that such damages are ineffective, to implement a

---

quences in from punitive damage awards imposed in the past. Finally even if an award were to have such consequences, this court, as explained below, would consider it a self-inflicted punishment not touching upon due process concerns.

**5.** In the usual circumstance a defendant who committed an outrageous tort would have punitive damage liability imposed upon him immediately. If he purposefully repeated his conduct on a new plaintiff, not only would punitive damages be awarded again, they might very well be awarded in a higher amount as a jury could find evidence of even greater maliciousness. (Consider a bus driver who, every day for twenty years, drives while incapacitated by alcohol; he might be involved in hundreds of accidents and having his acts described as a "single course of conduct" would be to no avail). The only difference between the alleged conduct of the asbestos companies and such a tortfeasor is that the cause and effect of the asbestos defendants' actions are more widely spaced. Nevertheless the defendants *are* accused of continuously repeating their misconduct; it is only in hindsight that their conduct may take on the appearance of singularity. However this court sees no reason to relieve them of liability on "fairness" grounds merely because the effects of that misconduct came to light many years after the cause.

solution to the problem.[6]

Moreover, this court finds that a rule limiting punitive damages to one award, regardless of the number of plaintiffs harmed, would serve to limit if not destroy the true deterrent effect of punitive damages. Punitive damages serve to deter manufacturers as, unlike with compensatory damages, the defendant is prevented from making the "coldblooded calculation" that it is more profitable to pay claims than correct a defect. *Campus Sweater & Sportswear v. M.B. Kahn Constr.*, 515 F.Supp. 64, 106–107 (D.S.C.1979), *aff'd* 644 F.2d 877 (4th Cir.1981). If punitive damages are limited to the first plaintiff who happens to sue, manufacturers will be able to predict, within certain limits, how much punitive damages will be awarded and figure such a number into a cost/benefit analysis. Rather than cure a defect, manufacturers might accept the risk of paying a limited punitive award. *Leonen v. Johns–Manville*, 717 F.Supp. at 275.[7]

▮ Defendants have also suggested that punitive damages are inappropriate in multi-claimant litigation because numerous punitive damage awards could deplete corporate assets and destroy the ability to pay compensatory damages to future claimants. Although this court finds defendants' concern for future plaintiffs to be admirable, this court is unpersuaded by the argument.

First there is no evidence before this court that defendants' assets are being destroyed by the successive awards of punitive damages. Secondly, although it would be unfortunate if a subsequent plaintiff could not obtain relief, this court believes it would be more unfortunate to allow defendants a windfall by permitting them to argue that the *possibility* of future litigation is sufficient to avoid the imposition of punitive damages. Furthermore, the scenario painted by Celotex is no different from any bankruptcy, where liabilities, including contingent tort liabilities, exceed assets. In such a case a bankruptcy court may conceive an equitable plan for creditors. This court sees absolutely no reason to fashion what would be, in effect, an exception to bankruptcy law simply because of alleged harm to a defendant corporation not even in bankruptcy.

Finally this court feels that it would be simply be improper to relieve a defendant from liability for punitive damages because

---

**6.** The court notes that the one court to fully adopt defendants' due process and policy arguments has reconsidered its opinion and has agreed that any limitations on punitive damages must come from the legislature. *Juzwin v. Amtorg Trading Corp., et al.*, 705 F.Supp. 1053 (D.N.J.1989), held that if defendants could come forward with competent evidence of payment of punitive damage claims for the same conduct alleged in the case before the court, the punitive damage claim would be dismissed. However another court in the District of New Jersey refused to follow *Juzwin* stating that only the legislature could limit such claims. *Leonen v. Johns–Manville*, 717 F.Supp. 272 (D.N.J.1989). The *Juzwin* court then reconsidered its opinion stating that in any given case an award of punitive damages would not necessarily violate the due process clause if the first award was not intended to constitute the full punishment for defendants' wrongful conduct. The court then noted that only the legislature could remedy the situation with a uniform law changing trial procedure in mass tort cases. *Juzwin v. Amtorg Trading Corp., et al.*, 718 F.Supp. 1233 (D.N.J.1989).

**7.** Defendants, for example, focus on Justice O'Connor's opinion in *Browning–Ferris supra*, which, citing to the brief of the Pharmaceutical Manufacturers Association, stated that enormous punitive damage awards may have a detrimental effect on development of new products as some manufacturers of prescription drugs have decided that it is better to avoid "uncertain liability" than to introduce a new drug. This court respectfully suggests that if that is indeed what is happening then punitive damages are accomplishing a worthy goal. In this respect it is important to remember that punitive damages are awarded for some form of outrageous misconduct, never for simple negligence. A manufacturer who vigilantly and honestly tests his product can have no fear of punitive damages. "Uncertain liability" of punitive damages can only realistically mean, at best, serious doubts on the part of that manufacturer as to ultimate product safety. In such a situation this court believes society's interest in protecting itself from future harm outweighs the short term financial interests of entities such as the Pharmaceutical Manufacturers Association. To put it more bluntly, this court can only regret that the manufacturers of the drug thalidomide had no fears of "uncertain liability" and did not keep that new "miracle drug" out of the hands of the trusting public.

the defendant has managed to injure a large as opposed to a limited number of persons. Such a decision would have the perverted result of encouraging tortfeasors to continue their outrageous behavior long enough to be relieved from punitive damages and would thus violate the equitable principle that a wrongdoer may not be allowed to profit by his own wrong.

In accordance with the foregoing this court finds that the imposition of punitive damages does not affect the fundamental fairness concerns of the Due Process Clause.

## II. SUCCESSOR LIABILITY

### 1. *Background*

The corporate history of Celotex and its predecessor corporations has been described in detail by a number of courts.[8] The basic outline of the various transactions is as follows: Philip Carey Corporation, incorporated in 1888, merged with the Glen Alden corporation in 1967. In 1970 Philip Carey merged with another Glen Alden subsidiary, the Briggs Manufacturing Company and became known as the Panacon Corporation (Panacon continued to produce asbestos containing insulation products under the Philip Carey name). In 1972 Celotex purchased all of the stock of Panacon for cash and merged Panacon into Celotex, whereupon Panacon ceased to have corporate existence.

In each transaction the assets or stock were expressly acquired subject to the former company's liabilities. Section 11 of the Merger Agreement between Celotex and Panacon states in part:

*Certain Effects of Merger.* At the Effective Date of the merger, the separate existence of Panacon shall cease and Celotex shall possess all of the rights, privileges, powers and franchises both of a public and of a private nature of Panacon, subject to all their restrictions, disabilities and duties ... [A]ll debts liabilities and duties of Panacon shall ... attach to Celotex and may be enforced against it to the same extent as if such debts, liabilities and duties had been incurred or contracted by Celotex.

▮▮▮ Celotex asserts that because it began placing warnings on its asbestos products after 1972, all of the "outrageous conduct" upon which plaintiff's punitive damage claim is based was committed by its "predecessors" Philip Carey and Panacon. Celotex claims that it is an innocent "third party" who may not and should not be held liable for the punitive damage causing conduct of another corporation. This court however disagrees finding that under Hawaii corporate law Celotex is not considered to be an innocent "third party" and is in fact responsible for all of Panacon's liabilities.[9] Moreover the court finds that the imposition of this liability is completely consistent with the public policies underlying the award of punitive damages in Hawaii.

8. *See Celotex Corporation v. Pickett,* 490 So.2d 35 (Fla.1986); *In re Related Asbestos Cases,* 566 F.Supp. 818 (N.D.Ca.1986); *Wedgeworth, et al. v. Armstrong Cork, et al.,* No. S78–0002(N) (S.D. Miss. July 31, 1987).

9. Celotex is incorporated in Delaware, with its principal place of business in Florida. Defendants state that most of the asbestos products at issue were made in Ohio. Plaintiffs were injured in Hawaii. A federal court sitting in diversity applies the forum's choice-of-law rules. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Hawaii has adopted the "interest analysis" test. *Peter v. Peters,* 63 Hawaii 653, 634 P.2d 586 (1981). Under such a test Hawaii law is presumably applicable unless another state's law would best serve the interests of the states and

parties involved. *See Jenkins v. Whittacker,* 785 F.2d 720, 724 (9th Cir.1986). In this instance the issue is what type of liability passes between corporations after merger. (The issue is *not* whether the conduct of the defendant creates punitive damage liability, thus the law of Ohio, while relevant to the defendant's conduct is not relevant to the determination here). This court notes that courts in both Delaware and Florida, two states with an interest in applying their merger and contract laws over Celotex, have ruled that Celotex *is* liable for punitive damages. *Celotex Corp. v. Pickett,* 490 So.2d 35 (Fla.1986); *Sheppard v. A.C. & S. Co.,* 484 A.2d 521 (Del.Super.1984). As this court finds that Hawaii law to be consistent, there is no need to determine which law "best serves the states and parties." All law points to the imposition of punitive damage liability.

### 2. *Hawaii Law Imposes Liability on a Successor*

The Hawaii Supreme Court has indicated that a corporation which succeeds in some manner to the assets of another corporation will be responsible for the debts and liabilities of the "predecessor" under the following circumstances: (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of good faith are lacking, as where the transaction was without consideration and the creditors were not provided for; and (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation. *See State etc. v. Yamada & Sons*, 59 Haw. 543, 584 P.2d 114, 116 n. 1 (1978).

 Furthermore, in Hawaii, when a corporation dissolves itself, the stockholders at the time of dissolution are considered the real party in interest upon *all* claims against the dissolved corporation. *See In re Ellis*, 53 Haw. 23, 487 P.2d 286, 290 (1971). Finally, the Hawaii legislature has made its policy on mergers abundantly clear. Hawaii Rev.Stat. Section 415–76 states,

> When a merger or consolidation has become effective:
>
> (5) The surviving or new corporation shall thenceforth be responsible and liable for *all of the liabilities* and obligations of each of the corporations so merged or consolidated; and *any claim* existing or action or proceeding pending by or against any of the corporations may be prosecuted as if the merger or consolidation had not taken place, or the surviving or new corporation may be substituted in its place.

 In the present case the court notes that Celotex would be liable for Panacon's liabilities under several of the applicable rationales. First, as noted the Panacon–Celotex merger agreement provides that upon the effective date of the merger "all debts, liabilities and duties of Panacon ... attach to Celotex and may be enforced against it ... *as if such ... had been incurred* or contracted by Celotex." (emphasis added). "All liabilities" include contingent liabilities such as tort claims and tort claims include claims for punitive damages. *See Krull v. Celotex Corporation*, 611 F.Supp. 146, 148 (N.D.Ill.1985); *Wall v. Owens–Corning Fiberglas Corp.*, 602 F.Supp. 252, 255 (N.D.Tex.1985); *Celotex Corp. v. Pickett*, 459 So.2d 375 (Fla.App. 1984).

Secondly the Celotex–Panacon merger, both under the statutory and common law, makes Celotex responsible for all of Panacon's liabilities. *See Hanlon v. Johns Manville Sales Corp.*, 599 F.Supp. 376 (N.D. Iowa 1984); *Pickett, supra; Sheppard, supra.* Moreover the court notes that Celotex accomplished this merger by purchasing all of the stock of Panacon. Under the rationale expressed in *In re Ellis*, Celotex, as the stockholder-owner of Panacon before its dissolution is the real party responsible for *all* of Panacon's liability after its dissolution.[10]

In sum, the law is clear: Corporate liabilities should not be allowed to disappear behind the artificial facades of new legal constructions. As no Hawaii court or legislature has created an exception for punitive damages, this court will certainly not presume to create one. In the present case Celotex, the stockholder-owner and merged survivor of Panacon, is responsible for all of Panacon's liabilities including punitive damage claims.

### 3. *No Exception for Punitive Damage Liability*

Defendant has not contested that it is liable for compensatory damages caused by

---

**10.** Defendant has suggested that had they merely bought out all the assets of Panacon, instead of merging into it, they would not be liable for punitive damages. Thus they claim imposing liability on the grounds of merger amounts to a punishment over a technicality. Defendants are mistaken. Besides for ignoring the fact that defendants expressly assumed *all* liabilities of Panacon, in Hawaii liability is imposed on the purchasing corporation when the transaction "amounts" to a consolidation or merger. *Yamada, supra.* Defendant's labeling of the transaction would be irrelevant.

its predecessor but instead claims that punitive damage liability should be excepted from general successor liability rules. Defendant's position is as follows: Hawaii law allows for punitive damages but specifies that the deterrent and retributive effect of such damages must be felt by the wrongdoer, not an innocent third party. *See Lauer v. YMCA of Honolulu,* 57 Hawaii 390, 402, 557 P.2d 1334 (1976). Since the conduct complained of was committed by its predecessor, Celotex identifies itself as an "innocent" party and therefore holds that punitive damages may not and should not be assessed against it. This court finds, however, that Celotex's definition of an "innocent party" is totally inconsistent with Hawaii and general corporate law.

To begin, a corporation is an artificial entity. It has no "memory" beyond that of its current management, it "feels" no loss beyond that felt by its stockholders. Therefore although punitive damages are assessed against the corporation itself, the true deterrent and retributive effect is obviously exercised on the ownership and management of the corporation, those ultimately responsible for the corporation's behavior. This is true despite the fact that corporation may have a constantly changing collection of owners and consequently may have a constantly changing management.

■ In Hawaii, a corporation is liable for punitive damages caused by its agents. The *only* limitation placed upon the award of such damages is that the corporation expressly or impliedly ratified the agent's acts. *Bulgo v. Munoz,* 853 F.2d 710 (9th Cir.1988). The fact that the list stockholders and even management may have changed (*as undoubtedly occurs in a large corporation*) between the time of the performance of the outrageous acts and the imposition of liability by a court is irrelevant. The corporation is liable.

Thus when a corporation is held liable for punitive damages, all the stockholders "suffer" whether or not they were owners at the time of the tortious behavior and whether or not new management exists. Thus when speaking of corporations, the true deterrent and retributive effect of punitive damages is often felt by persons having nothing to do with the tortious conduct (the new stockholders and management).

■ If Celotex's definition of an "innocent party" were indeed the law in Hawaii, these new stockholders would be considered innocent third parties and a corporation in the position of having such new stockholders would be immune from the effects of punitive damages committed at an earlier date in corporate history. However as Hawaii does not hold that such a corporation is immune from punitive damages, Celotex's position is obviously not the law. In Hawaii deterrent and retributive effect may pass to new owners along with the corporate shell. Thus Celotex, having acquired Panacon's stock, shell, and assets cannot be considered an innocent third party, must be considered to be a continuation of Panacon and therefore may be liable for punitive damages.

### 4. *Public Policy Favors Punitive Liability on Successors*

■ Although Celotex cannot point to any Hawaii precedent under which it would be exempted from punitive damages, Celotex asserts that the policies underlying the imposition of general punitive damages are not present when dealing with "successor" corporations and that therefore punitive damage liability should not be found unless the successor corporation is in fact the "same entity" (as opposed to an acquiring corporation) as the predecessor corporation. Defendant argues that deterrence and retribution, the goals of punitive damages are simply inappropriately applied to a successor corporation.[11] As noted the

---

**11.** The court is aware that a few courts have adopted the "same entity" rule. *See In re Asbestos Case,* 566 F.Supp. 818 (N.D.Cal.1983) (applying California law); *Chapin v. Celotex,* No. S79–0272(N) (S.D.Miss. Jan. 30, 1984). As stated this

court finds such an approach to be inconsistent with Hawaii law. Specifically one of the tests to determine whether a corporation is the "same entity" or not is whether there is an overlap of management and stockholders between the two

"same entity" approach is inconsistent with Hawaii law and even if the court were to agree with defendant's reasoning, this court would not presume to create an exception to Hawaii corporate law. That said the court notes that it is not persuaded by defendant's argument and finds that public policy favors the imposition of punitive damages on successors.

First as a general matter of fairness this court agrees that an "acquiring corporation cannot accept the good without the bad, absent an unlikely agreement with the acquired entity, and jettison inchoate liabilities into a never-never land of transcorporate limbo". *See Wall v. Owens–Corning Fiberglas Corp.*, 602 F.Supp. at 255. When Celotex chose to merge with Panacon it freely chose to accept the problems of Panacon along with its good will.

Secondly deterrence can be equally served by awarding punitive damages against the successor corporation, even where that successor was not directly responsible for the wrong to the plaintiff. As stated by the court in *Celotex Corp. v. Pickett supra:*

> [A]llowing punitive damages [against successors] may well deter other corporations from seeking to merge with other companies which have engaged in reckless conduct detrimental to the public health and thereby have the potential for the imposition of punitive damages.... Were we to hold that the potential for punitive damages disappears at merger, this may well encourage reckless conduct ... Realization that their companies will sell for less, or not at all, if they engage in reckless behavior provides an incentive for acquisition candidates to conform their behavior to socially acceptable norms.

490 So.2d at 38.

Finally this court is not so naive as to believe that tortfeasors would not take no-

tice of a rule exempting them from punitive damage liability in the event of changes in the ownership and structure of corporate assets. In Hawaii punitive damages are assessed to deter the defendant and others from similar conduct in the future. *See Masaki, supra.* In this era of constant corporate transformations, mergers, "buyouts" and other assorted Wall Street wizardry, any rule excusing successor corporations from punitive damage liability would only serve to hinder this goal.

## III. CONCLUSION

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir.1985). As this court finds that punitive damages are not unconstitutional, are not imposed in an unconstitutional manner and, under Hawaii law, are proper against successor corporations, defendants' motion for summary judgment on plaintiffs' punitive damage claims is DENIED.

IT IS SO ORDERED.

corporations. As noted this court finds such an observation to be irrelevant as the general rule of corporate liability *never* depends on whether the shareholders and management at the time of the imposition of liability are the same as when the tortious conduct was committed. Finally the court notes that a subsequent opinion in the

Southern District of Mississippi refused to follow *Chapin*, holding Celotex liable for punitive damages, stating that Judge Nixon's opinion in Chapin resulted from a misleading presentation of the facts and an inappropriate legal standard. *See Wedgeworth v. Armstrong Cork, et al.*, No. S78–0002(N) (S.D.Miss. July 31, 1987).