J. Gordon DOUGLAS, Jr.

v.

BANK OF NEW ENGLAND/OLD
COLONY, N.A.

Docket No. 87–555–Appeal.

Supreme Court of Rhode Island.

Nov. 29, 1989.

G. Quentin Anthony, MaryJo Carr, and Richard B. Sheffield (Sheffield & Harvey), Newport, for plaintiff.

Dennis J. Roberts, II, Providence, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on the appeal of the defendant from a judgment entered in the Superior Court awarding punitive damages to the plaintiff against the predecessor corporation Newport National Bank (Newport). Subsequent to the rendition of judgment for punitive damages against Newport National Bank, the present defendant, Bank of New England/Old Colony, N.A. (New England), was substituted as a party defendant for Newport. We affirm the judgment of the Superior Court and hold that New England is responsible for payment of this judgment, including punitive damages, as a result of the terms of the merger agreement by which it became the surviving corporation of a merger with Newport and Old Colony Bank. The facts of the case insofar as they are pertinent to this appeal and to the question of successor corporate liability, are as follows.

Originally this action was brought by plaintiff against Newport individually and in its capacity as executor under the will of James Gordon Douglas (James). A trust estate that had been created by William P. Douglas, the father of James, came into possession of Newport as a result of the advice of Cornelius C. Moore (Moore), who served as attorney to the trustees. James was a beneficiary of this trust. James executed a will that named Newport as one of his executors. The will provided that one-third of the trust estate would, through James's appointment, go to his wife, Garnett C. Douglas (Garnett). Since James released the remainder of his powers of appointment, the rest of the trust estate would go by terms of the original trust to his heirs-at-law, who at the time of his death were plaintiff J. Gordon Douglas, Jr. (Gordon), and his brother Barclay K. Douglas (Barclay).

Without going into the details of transactions occurring among Gordon, Barclay, and Moore, it is undisputed that the corpus of the trust estate was deposited with Newport and was held subject to the order of Attorney Moore, even though he had never been engaged as an attorney by either Gordon or Barclay (who were the surviving trustees). Eventually, Moore, as attorney for Newport, which was co-executor of James's will, directed the bank to make distribution to the three beneficiaries. Specifically he directed that $326,000 be distributed each to Barclay and Garnett, but approximately $300,000 to plaintiff. In effect, for reasons which are not clear, he withheld $26,000 from plaintiff. The trial justice found that Newport, through its assistant cashier, was well aware of this fact and made several attempts to obtain Moore's consent to make a further distribution to plaintiff. Moore refused consent, and the appropriate officer of Newport would not make distribution until Moore authorized it.

After Moore's death, the assistant cashier notified plaintiff of the withheld cash and bonds, and on June 1, 1970, sent to plaintiff a check for the cash and the bonds that had been held since May 29, 1963. The trial justice found that this was the first time that plaintiff was given actual knowledge that a portion of his share of the trust estate had been withheld. The trial justice further found that Newport knew of its obligation to make its distribution to plaintiff, but refused to do so because of the objection of Moore. Having determined that such action constituted a conversion of plaintiff's property, the trial justice computed compensatory damages including interest in the sum of $50,507.50.

Turning to the issue of punitive damages, the trial justice found that from May 29, 1963, to June 1, 1970, plaintiff's property had been held by Newport without depositing the cash at interest and without presenting bearer coupons on the bonds for payment and depositing said sums at interest. Although plaintiff had numerous business transactions with Newport during this seven-year period, he was never informed of the withheld property. The trial justice

concluded by stating: "This conduct on the part of the bank is unconscionable and cries out for sanctions. The bank is, therefore, assessed exemplary damages in the amount of $225,000." This judgment against Newport was entered in the Superior Court for the County of Newport on August 5, 1987.

Meanwhile Old Colony Bank, a federal savings bank, had purchased 95 percent of the stock of Newport with the approval of the Board of Governors of the Federal Reserve System. Both corporate entities remained intact, and each bank held itself out to the public as "Old Colony/Newport National Bank." Officers and other employees of the Newport National Bank became employees of the Old Colony/Newport National Bank (Old Colony).

On October 1, 1985, Old Colony entered into a merger agreement with Bank of New England Corporation. Under this agreement, Old Colony was required to disclose matters, including litigation, which would have or which could reasonably be expected to have "a material adverse effect upon the financial condition, results or operations, business or prospects of Old Colony and its subsidiaries taken as a whole."

The stock-purchase agreement did state that "other litigation matters are set forth in a document entitled 'Old Colony/Newport National Bank, Pending or Threatened Litigation, dated September, 1985,' which has been previously delivered to BNEC [New England]." In the agreed statement of facts, the parties set forth that New England has been unable to locate the aforesaid document of September 1985, and that the contents thereof are unknown. It is agreed by the parties that the instant civil action was referenced on a number of occasions in correspondence of attorneys for Newport to the accounting firm of Peat, Marwick, Mitchell & Company and to a national bank examiner and was indexed in the Newport County Superior Court under both plaintiff's and defendant's names.

■ New England voluntarily paid to plaintiff the compensatory damages awarded by the judgment against Newport. The

sole question posed by this appeal is whether New England is liable for the punitive damages assessed against Newport. New England argues that a number of cases have held that successor corporations are not responsible for punitive damages. An examination of these cases, however, indicates that this rule has been applicable when successor corporations have acquired the assets of another corporation by purchase. The rule is not applicable when a successor corporation has resulted from a merger. This rule is set forth in 15 Fletcher, *Private Corporations,* § 7121 at 185 (Perm. Ed.1983) as follows:

> "In case of merger of one corporation into another, where one of the corporations ceases to exist and the other corporation continues in existence, the latter corporation is liable for the debts, contracts and torts of the former * * * ."

This general rule is buttressed and indeed superseded by the statute that controls the merger of national banks, 12 U.S.C.A. § 215a.(a) (West 1989). This statute codifies the general rule and states in pertinent part as follows:

> "One or more national banking associations or one or more State banks, with the approval of the Comptroller, under an agreement not inconsistent with this subchapter [12 U.S.C.A. § 215a.] may merge into a national banking association located within the same State, under the charter of the receiving association. The merger agreement shall
>
> \* \* \* \* \* \*
>
> (4) provide that the receiving association shall be liable for *all liabilities* of the association or State bank being merged into the receiving association." (Emphasis added.)

Pursuant to this statute the merger agreement between New England and Old Colony (of which Newport was an integral part) contained the following language:

> "All assets as they exist at the effective time of the merger, including trust powers of each of the merging banks, shall pass to and vest in the Association (Bank of New England–Old Colony, N.A.) without any conveyance or other transfer; and the Association shall be responsible for *all the liabilities of every kind and description,* including arising out of the exercise of trust powers of each of the merging banks existing as of the effective time of the merger." (Emphasis added.)

It is difficult to imagine a more comprehensive statement of assumption of liability than that which is contained in this merger agreement. It does not purport to limit the type of liability assumed in such fashion as to exclude any form of liability, including punitive damages. Other courts that have dealt with merger agreements have given an interpretation that includes the assumption of punitive damages awarded against the predecessor corporation. *See, e.g., Krull v. Celotex Corp.,* 611 F.Supp. 146 (N.D. Ill.1985); *Moe v. Transamerica Title Insurance Co.,* 21 Cal.App.3d 289, 98 Cal. Rptr. 547 (1971); *Celotex Corp. v. Pickett,* 490 So.2d 35 (Fla.1986).

New England relies on a number of cases in which a successor corporation was not held liable for the debts of its predecessor in a nonmerger situation. *See, e.g., Bud Antle, Inc. v. Eastern Foods, Inc.,* 758 F.2d 1451 (11th Cir.1985), and cases cited therein. This case did not involve a merger, but an acquisition of assets. Indeed, it recognized that in the event the transaction amounted to a de facto merger of the buyer and the seller, there would be an assumption of debts and liabilities. *Id.* at 1457–58. Here we have not only a de facto but a formal de jure merger governed by a federal statute and an agreement formulated by the parties in pursuance thereto.

This merger resulted in the infusion of the blood of Old Colony and of Newport into the veins of the successor corporation, Bank of New England/Old Colony, N.A. *See Atlanta Newspapers, Inc. v. Doyal,* 84 Ga.App. 122, 128, 65 S.E.2d 432, 437 (1951) (similar metaphor used of the joining of two rivers in a consolidation of two corporations). As a result of this substitution of identity, the successor corporation became responsible for all debts and liabilities of its constituent corporations. Nothing in the

**942**

statute or the merger agreement excluded punitive damages. We are not dealing here with a matter of public policy such as motivated this court in its determination that an insurer was not responsible for punitive damages. *Allen v. Simmons,* 533 A.2d 541 (R.I.1987). In interpreting the general language of that policy, we limited coverage to compensatory damages, since otherwise all the insureds of the covering company would be required to share the liability. *Id.* at 543–44. Here we have a successor corporation that has expressly assumed the liabilities as a part of a business decision to utilize a formal de jure merger. As in *Krull v. Celotex Corp.,* 611 F.Supp. 146 (N.D. Ill.1985), the corporations were largely the molders of their own destinies in this transaction.

New England also asserts that it may not have been aware of Newport's responsibility for punitive damages at the time of the merger agreement. From the agreed statement of facts, it cannot be said with any degree of certainty whether New England was actually given written notice of the instant lawsuit since the document on pending or threatened litigation dated September 1985 is not presently available and its contents are unknown. It is nevertheless undisputed and agreed by the parties that the pendency of this litigation in the Superior Court for the County of Newport was public information that could have easily been ascertained by any interested party. Consequently, as with all other debts and liabilities of record, New England was chargeable with constructive notice of the pendency of this litigation, which had been instituted long before the merger of October 1, 1985.

Although New England raises a due process argument under the United States Constitution and an excessive fines argument under the Rhode Island Constitution, these arguments are not persuasive in light of the fact that there is no showing that the trial justice's award against Newport constituted an abuse of either the due process clause of the Federal Constitution or the excessive fines clause of the Rhode Island Constitution. *See Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). In our judgment the exemplary award against Newport in the circumstances of this case was well within the discretion of the trier of fact to determine for a deliberate conversion. The liability of New England for this award is a matter of voluntary assumption of liability and does not implicate either the due process clause of the Federal Constitution or the excessive fines clause of either constitution.

For the reasons stated, the appeal of the defendant New England is denied and dismissed. The judgment of the Superior Court is hereby affirmed, and this court specifically holds that Bank of New England/Old Colony, N.A., is responsible for the punitive damages assessed by the Superior Court against its predecessor Newport National Bank. The papers of the case may be remanded to the Superior Court for the County of Newport.