**Busy Bee Inc. v. Wachovia Bank**

*Steve M. Coren,* for plaintiff.
*Elizabeth K. Ainslie,* for defendant.

NEALON, *J.,* May 6, 2005—Defendant Wachovia Bank N.A., successor by merger to Corestates Bank N.A., has filed a motion in limine raising a novel evidentiary issue which has not yet been addressed by an appellate court in Pennsylvania: Whether the net worth of the successor corporation (Wachovia) or the net worth of the predecessor corporation and original tort-feasor (Corestates) is the appropriate measure of "the wealth of the defendant" for purposes of assessing punitive damages? Defendant contends that, since the jury found that Corestates had engaged in outrageous conduct in 1995 and 1996, and Wachovia became the successor by merger to Corestates in 2001, only the net worth of Corestates is relevant to the dual goal of punishing the tort-feasor and deterring it from committing such conduct in the future. However, since punitive damages also serve to deter the actions of like-minded tort-feasors, and Wachovia's wealth reflects the defendant's current ability to pay any punitive damages award secured by the plaintiffs, the net worth of Wachovia is likewise relevant. Therefore, the parties will be permitted to introduce evidence of Wachovia's wealth in 2005 and Corestates' wealth in 1995-1996, and to present their respective arguments to the jury as to why the wealth of either the successor bank or the predecessor bank is more appropriate proof of the "wealth of the defendant" in this case.

## I. FACTUAL BACKGROUND

Plaintiffs instituted this lender liability suit based upon the actions of Corestates Bank N.A., in connection with letters of credit and a revolving line of credit that the plaintiffs had obtained for their wholesale and retail shoe businesses which operated under the name of B. Levy & Son. B. Levy's claims are predicated upon Corestates' conduct in 1995 and 1996 which allegedly forced B. Levy into bankruptcy on July 27, 1996. See *Busy Bee Inc. v. Corestates Bank N.A.,* 67 D.&C.4th 496, 499-509 (Lacka. Cty. 2004). On October 27, 1997, B. Levy filed a complaint against Corestates charging it with breach of contract, breach of fiduciary duty, fraudulent misrepresentation and negligent misrepresentation, and seeking the recovery of compensatory and punitive damages. *Id.* at 509. On April 28, 1998, First Union Corporation acquired Corestates, and on September 1, 2001, Wachovia Bank N.A. acquired First Union and thereby became the successor by merger to Corestates. (See defendant's motion to limit evidence on punitive damages, ¶¶7-9.) However, during the ensuing 44 months, Corestates remained as the only named defendant in this case.

Prior to trial, Corestates' motion to bifurcate the liability and damages phases of the trial was granted, and a liability trial was conducted from September 13, 2004 through September 30, 2004. In response to special verdict interrogatories, the jury found that Corestates had breached contractual and fiduciary duties and had committed fraudulent and negligent misrepresentations, and that such conduct had caused harm to B. Levy. With regard to B. Levy's claim for punitive damages, the liability trial jury further found that Corestates' tortious con-

duct was outrageous. After post-trial efforts to resolve this matter proved futile, the damages portion of this trial was scheduled for May 9, 2005. See *Busy Bee Inc. v. Corestates Bank N.A.,* 106 Lacka. Jur. 24, 25 (2005).

On April 29, 2005, the parties filed a stipulation to substitute Wachovia as the named defendant in this case, and by order dated April 29, 2005, the caption of this case was amended to reflect Wachovia as the named defendant, as successor by merger to Corestates. In anticipation of the damages trial, Wachovia filed a "motion to limit evidence on punitive damages" asserting that any "net worth" evidence in conjunction with B. Levy's punitive damages claim should be restricted to Corestates' net worth in 1995 and 1996. (See defendant's motion to limit evidence on punitive damages, ¶¶15-17.) Documentation which has been produced pursuant to Pa.R.C.P. 4003.7 reflects that "Corestates' total shareholders' equity was $2.6 billion in 1995 (exhibit 1 at 58), $3.6 billion in 1996 (exhibit 2 at 58) and $3.2 billion in 1997 (exhibit 3 at 12)" whereas "Wachovia's total shareholders' equity was $32.4 billion as of December 31, 2003 (exhibit 4 at 78)." (Defendant's brief in support of motion to limit evidence on punitive damages, pp. 5-6.)

Wachovia submits that since the primary goal of punitive damages is to punish the tort-feasor for its egregious conduct and to deter the tort-feasor from similar conduct in the future, "evidence of wealth must be limited to the tort-feasor's wealth." (*Id.,* p. 3.) Wachovia argues that Corestates was the sole tort-feasor in this case and that "Wachovia is a twice removed successor by merger, with no connection to plaintiffs or to plaintiffs' alleged wrongs" and "did nothing more than purchase the tort-

feasor organization after the events at issue." (*Id.,* pp. 1, 4.) According to Wachovia, "permitting the jury to consider the wealth of a subsequent innocent and uninvolved acquirer will have the perverse impact of deterring large corporations from purchasing smaller businesses." (*Id.,* p. 4.) Hence, Wachovia posits that "[t]he financial assets of Wachovia or First Union are not probative of Corestates' wealth" under Pa.R.E. 401 and should be excluded as "unfairly prejudicial" under Pa.R.E. 403. (*Id.,* p. 6.)

B. Levy counters that Wachovia's net worth is relevant since the mergers of Corestates, First Union and Wachovia were consummated pursuant to the federal Bank Merger Act. That statute requires Wachovia to assume all liabilities of the predecessor banks, Corestates and First Union, and further provides that Wachovia is deemed to be "the same corporation" as each bank which participated in the mergers. B. Levy maintains that Wachovia is, therefore, considered to be "the tort-feasor" by virtue of the federal Bank Merger Act such that the net worth of Wachovia is relevant for purposes of punitive damages. Wachovia's evidentiary objection will be addressed without the benefit of any appellate precedent which is directly applicable.

## II. DISCUSSION

### (A) *Standard of Review*

Wachovia asserts that evidence of its net worth is not relevant to B. Levy's punitive damages claim and that any putative relevance is outweighed by the danger of unfair prejudice. Evidence is deemed relevant under Pa.R.E. 401 if it has "any tendency to make the exis-

tence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Commonwealth v. Levanduski,* 2005 WL 729662, *8, ¶25 (Pa. Super. 2005). Accord, *Commonwealth v. Boczkowski,* 577 Pa. 421, 443, 846 A.2d 75, 88 (2004) (evidence is relevant "if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact . . . ."); *Commonwealth v. Johnson,* 874 A.2d 66, 72 (Pa. Super. 2005). "A trial court has wide discretion in ruling on the relevancy of evidence and its rulings will not be reversed absent an abuse of discretion." *Fidler v. Cunningham-Small,* 871 A.2d 231, 234 (Pa. Super. 2005). An abuse of discretion is not merely an error of judgment, and instead requires "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record." *Carroll v. Avallone,* 869 A.2d 522, 525 (Pa. Super. 2005).

Relevant evidence may be excluded under Pa.R.E. 403 if its probative value is outweighed by, inter alia, the danger of unfair prejudice. *Commonwealth v. Serge,* 58 D.&C.4th 52, 61 (Lacka. Cty. 2001), *aff'd,* 837 A.2d 1255 (Pa. Super. 2003), *appeal granted in part,* 858 A.2d 1159 (Pa. 2004). Prejudice "does not mean detrimental to a party's case, but rather, an undue tendency to suggest a decision on an improper basis." *Pittsburgh Construction Co. v. Griffith,* 834 A.2d 572, 585 (Pa. Super. 2003), *appeal denied,* 578 Pa. 701, 852 A.2d 313 (2004). Therefore, the exclusionary rule set forth in Pa.R.E. 403 "is limited to evidence so prejudicial that it would inflame

the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Broaster,* 863 A.2d 588, 592 (Pa. Super. 2004). Such a determination is likewise within the sound discretion of the trial court, *Boykin v. Brown,* 868 A.2d 1264, 1266 (Pa Super. 2005), and the reviewing court "on appeal will accord a large measure of discretion to the trial court regarding the admission or exclusion of evidence." *Gigus v. Giles & Ransome Inc.,* 868 A.2d 459, 463 (Pa. Super. 2005).

(B) *Relevancy of Defendant's Net Worth*

The public policy underlying Pennsylvania law on punitive damages is relevant to the question of whether Wachovia's net worth is admissible. Punitive damages may be awarded in this Commonwealth for conduct "that is outrageous, because of the defendant's evil motive or [its] reckless indifference to the rights of others." *Hutchison ex rel. Hutchison v. Luddy,* 870 A.2d 766, 770 (Pa. 2005). Punitive damages are not regarded as additional compensation but, as the name suggests, are considered purely penal in nature. *G.J.D. by G.J.D. v. Johnson,* 552 Pa. 169, 172, 713 A.2d 1127, 1129 (1998). The stated purpose of punitive damages is to punish a tort-feasor for outrageous conduct and to deter the tort-feasor and other like-minded individuals from engaging in similar conduct in the future. *Hutchison, supra; Phillips v. Cricket Lighters,* 852 A.2d 365, 373 (Pa. Super. 2004); *Judge Technical Services Inc. v. Clancy,* 813 A.2d 879, 888 (Pa. Super. 2002).

In assessing punitive damages, the trier of fact should consider: (1) the character of the defendant's act; (2) the

nature and extent of the harm suffered by the plaintiff; and (3) the wealth of the defendant. *Kirkbride v. Lisbon Contractors Inc.,* 521 Pa. 97, 102, 555 A.2d 800, 803 (1989) (citing Restatement (Second) of Torts §908(2)); *Hollock v. Erie Insurance Exchange,* 842 A.2d 409, 419 (Pa. Super. 2004). But see *Reading Radio Inc. v. Fink,* 833 A.2d 199, 215 (Pa. Super. 2003) ("evidence of wealth is not mandatory to establish a claim for punitive damages."). A defendant's net worth has been recognized "as a valid measure of its wealth" for purposes of punitive damages. See *Sprague v. Walter,* 441 Pa. Super. 1, 61-63, 656 A.2d 890, 920 (1995), *appeal denied,* 543 Pa. 730, 673 A.2d 336 (1996); *Rutkowski v. Allstate Insurance Co.,* 69 D.&C.4th 10, 45 (Lacka. Cty. 2004); *Ogozaly v. American Honda Motor Co. Inc.,* 67 D.&C.4th 314, 332 (Lacka. Cty. 2004).

Wachovia does not contest its legal responsibility for payment of any punitive damages awarded by the jury based upon the outrageous conduct of Corestates.[1] It is undisputed that the Corestates-First Union and First

---

1. Several courts and commentators have questioned the propriety of imposing punitive damages on a successor corporation as a result of the actions of a predecessor in interest, where the successor corporation is not the product of a statutory merger or has not expressly assumed the predecessor's liabilities. See *e.g., Martin v. Johns-Manville Corp.,* 322 Pa. Super. 348, 371-72, 469 A.2d 655, 667 (1983), *rev'd on other grounds,* 508 Pa. 154, 494 A.2d 1088 (1985) (per Hutchinson, J., with one justice concurring and four justices concurring in result); *Gower v. Savage Arms Inc.,* 166 F. Supp.2d 240, 248 (E.D. Pa. 2001); Slawotsky, *The Impropriety of Levying Punitive Damages on Innocent Successor Corporations,* 38 Duq. L.Rev. 49 (fall 1999); Levenstam & Lynch, *Punitive Damages Awards Against Successor Corporations: Deterrent of Malicious Torts or Legitimate Acquisitions?,* 26 Tort & Ins. L.J. 27 (fall 1990).

Union-Wachovia merger agreements contain the assumption-of-liability language mandated by the federal banking statute governing mergers of national banks. Section 215a(a)(4) of that statute states that any merger agreement involving the merger of national banking associations or state banks into a single national banking association must "provide that the receiving association shall be liable for all liabilities of the association or state bank being merged into the receiving association . . . ." 12 U.S.C. §215a(a)(4). Section 215a(e) further provides that "[t]he corporate existence of each of the merging banks or banking associations participating in such merger shall be merged into and continued in the receiving association, and such receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger." 12 U.S.C. §215a(e).[2] Consequently, since a successor bank is deemed to be "the same corporation" as the merging banks and is responsible "for all liabilities" of the merging banks, Wachovia is clearly liable for any punitive damages award in this case. See *Culbreath v. First Tennessee Bank N.A.,* 44 S.W.3d 518, 525 (Tenn. 2001) ("If we were to interpret 'all liabilities' in 12 U.S.C. §215a(a)(4) to exclude punitive damages, we would be ignoring the ordinary meaning of the word 'all' "); *Douglas v. Bank of New England/Old Colony N.A.,* 566 A.2d 939, 941 (R.I.

---

2. The Pennsylvania Banking Code of 1965, 7 P.S. §101 et seq., similarly states that a merging bank "shall cease as a separate entity but shall continue in" the successor corporation and that "[a]ny claim existing or action pending" against the merging bank "may be prosecuted to judgment as if the merger or consolidation had not taken place or the resulting institution may be substituted in its place." 7 P.S. §§1606(c) and (f).

1989) (holding that successor bank was liable for punitive damages award against predecessor bank in light of assumption-of-liability language required by 12 U.S.C. §215a(a)(4) and reasoning that the "merger resulted in the infusion of the blood of [the predecessor banks] into the veins of the successor corporation, Bank of New England/Old Colony N.A."). Cf. *Commonwealth v. Lavelle,* 382 Pa. Super. 356, 378, 555 A.2d 218, 229 (1989), *appeal denied,* 524 Pa. 595, 568 A.2d 1246 (1989) (de facto successor corporation was criminally liable under Pennsylvania law for the offenses committed by its predecessor in interest).

Nevertheless, Wachovia submits that the primary object of punitive damages is to punish the culpable tort-feasor, Corestates, and to deter it from comparable conduct in the future, such that only the wealth of Corestates should be considered by the jury. While it is true that a punitive damages award is designed to punish and deter the tort-feasor, punitive damages also serve to deter others from engaging in similar conduct. For example, Pennsylvania law allows for the recovery of punitive damages against a decedent's estate even though the deceased tort-feasor may no longer be punished or deterred and the decedent's blameless heirs will be deprived of their inheritance as a result. See *G.J.D., supra* at 176, 713 A.2d at 1131 ("Although the decedent . . . will not be punished or deterred from committing further . . . egregious acts, the imposition of punitive damages upon his estate may serve to deter others from engaging in like conduct."). The deterrence of others is equally applicable in the context of corporate mergers or acquisitions and "may well deter other corporations from seeking to merge with other companies which have engaged in reckless con-

duct . . . and thereby have the potential for the imposition of punitive damages." *Celotex Corp. v. Pickett,* 490 A.2d 35, 38 (Fla. 1986). The existence of such successor liability may positively influence the conduct of predecessor companies or banks which wish to remain marketable for future mergers or acquisitions. See *Man v. Raymark Industries,* 728 F. Supp. 1461, 1471 (D. Hawaii 1989) ("Realization that their companies will sell for less, or not at all, if they engage in reckless behavior provides an incentive for acquisition candidates to conform their behavior to socially acceptable norms.").

Furthermore, the wealth of the defendant is considered to be relevant to a punitive damages claim because, inter alia, it bears upon the defendant's ability to pay an award of punitive damages. See *DiSalle v. P.G. Publishing Co.,* 375 Pa. Super. 510, 570-71, 544 A.2d 1345, 1376-77 (1988), *appeal denied,* 521 Pa. 620, 557 A.2d 724 (1989), *cert. denied,* 492 U.S. 906 (1989); *Berry v. Anderson,* 348 Pa. Super. 618, 626-27, 502 A.2d 717, 721 (1986) ("Courts recognize that punitive damages, to effectively deter reprehensible conduct, must be tailored to an individual's ability to pay."). Accord, *Dunn v. Hovic,* 1 F.3d 1371, 1384 (3d Cir. 1993) (denying remittitur request and finding that the punitive damages "award fixed by the trial court was well within [defendant's] ability to pay . . . ."), *cert. denied,* 510 U.S. 1031 (1993); *Bemer Aviation Inc. v. Hughes Helicopter Inc.,* 621 F. Supp. 290, 300 (E.D. Pa. 1985) ("In addition to the potential harm that a defendant's conduct poses, juries are allowed to consider the defendant's ability to pay when assessing an award of punitive damages."), *aff'd,* 802 F.2d 445 (3d Cir. 1986); *In re Solfanelli,* 230 B.R. 54, 70 (M.D.

Pa. 1999) (stating that award of punitive damages rested on assessment of pertinent factors, including the "creditor's ability to pay"), *aff'd sub nom., Solfanelli v. Corestates Bank N.A.,* 203 F.3d 197 (3d Cir. 2000). The Restatement position, which has been adopted by the Supreme Court of Pennsylvania, see *Chambers v. Montgomery,* 411 Pa. 339, 344-45, 192 A.2d 355, 358 (1963), expressly recognizes that "[t]he wealth of the defendant is also relevant, since the purposes of exemplary damages are to punish for a past event and to prevent future offenses, and the degree of punishment or deterrence resulting from a judgment is to some extent in proportion to the means of the guilty person." Restatement (Second) of Torts §908, comment e. The current ability to pay a punitive damages award remains a pertinent factor even if the culpable tort-feasor is no longer available to punish or deter. See *G.J.D., supra* at 177, 713 A.2d at 1131 ("The jury can then consider the value of the deceased tort-feasor's estate in arriving at a proper assessment of punitive damages."). It is the net worth of Wachovia, not Corestates, which reflects the current ability to pay B. Levy's punitive damages award.

Unfortunately, there is a paucity of decisional precedent addressing the specific issue raised by Wachovia regarding the admissibility of a successor corporation's net worth. In *Baker v. National State Bank,* 312 N.J. Super. 268, 711 A.2d 917 (1998), *judgment aff'd and remanded,* 161 N.J. 220, 736 A.2d 462 (1999), the successor bank argued that the jury should have been instructed to base its punitive damages "on the value of the [predecessor] bank at the time of its wrongdoing . . . ." *Id.,* at 292, 711 A.2d at 930. The trial judge charged the jury

with respect to the value of the predecessor bank at the time of its merger with the successor bank *and* the most recent value of the successor bank as of the date of trial. Finding that the ability to pay "implies current ability to pay," the New Jersey Superior Court concluded that "the jury was correctly instructed on punitive damages." *Id.* at 294, 711 A.2d at 930. The Supreme Court of New Jersey affirmed the Superior Court ruling in *Baker,* but remanded the matter to the trial court to consider whether the punitive damages award violated due process in light of the standards enumerated in *BMW of North America Inc. v. Gore,* 517 U.S. 559 (1996). See *Baker v. National State Bank,* 161 N.J. 220, 231, 736 A.2d 462, 468 (1999). The trial court subsequently held that the remitted award of $1.8 million in punitive damages did not violate the successor bank's substantive due process rights, and that ruling was affirmed by the Superior Court of New Jersey on appeal. See *Baker v. National State Bank,* 353 N.J. Super. 145, 165, 801 A.2d 1158, 1170 (2002) ("Punitive damages awards are exceptionally fact-specific, dependent on the conduct involved and, even more importantly, the wealth of the defendant.").

The only other reported decision analyzing this narrow issue is *Thomas v. E.J. Korvette Inc.,* 329 F. Supp. 1163 (E.D. Pa. 1971), *rev'd on other grounds,* 476 F.2d 471 (3d Cir. 1973). In that case, U.S. District Judge John P. Fullam permitted the plaintiff to introduce into evidence the net worth of both the successor corporation and the original tort-feasor. Following a verdict in favor of the plaintiff, the successor corporation asserted in its post-trial motion "that it was error to admit into evidence the $155,600,000 net worth of Spartan Industries Inc.,

the successor to E.J. Korvette Inc., defendant." *Id.* at 1169. In rejecting the successor corporation's argument, Judge Fullam reasoned that "the deterrence rationale of punitive damages makes it logical to conclude that the net worth of the successor corporation, the present defendant, would be the relevant circumstance." *Id.* at 1170. See also, *Culbreath,* 44 S.W.3d at 523 (noting that the trial court "found that an award of 1 percent of [the successor bank's] net worth was appropriate and therefore awarded $9,000,000 in punitive damages.").

Both parties have articulated legitimate policy reasons why the net worth of the predecessor bank (Corestates) and the successor bank (Wachovia) should be deemed relevant and admissible. As Wachovia notes, Corestates alone has been found to be the culpable party, and, for that reason, Corestates' wealth is relevant for purposes of punishment and deterrence. On the other hand, Wachovia is now considered to be the tort-feasor, and Corestates, by operation of the federal Bank Merger Act and the net worth of Wachovia, also reflects the current ability to pay any punitive damages award. Additionally, if banks realize that a successor bank's wealth will be admissible in a punitive damages claim premised upon a predecessor bank's conduct, it may encourage banks to act more responsibly in order to make themselves more attractive targets for merger suitors. As a consequence, the admission into evidence of a successor bank's net worth may serve to deter other banks from engaging in conduct comparable to Corestates' actions in this case.

There may be occasions in which the defendant may prefer to introduce evidence of the successor corporation's wealth as it relates to the ability to pay a punitive

damages award. It is conceivable that a corporation with a high profit margin and net worth could merge with another larger corporation, and that, due to a variety of unforeseen economic and industry-related factors, the successor corporation could later experience a dramatic decline in revenues or profitability. As a result, the struggling successor corporation could be forced to downsize its operations, sell assets or take other drastic measures in an effort to avoid bankruptcy. In that event, the net worth of the successor corporation could ultimately be less than the original value of the predecessor corporation. Any plaintiff seeking to recover punitive damages based upon the predecessor corporation's conduct would undoubtedly seek to introduce the predecessor corporation's greater net worth on the grounds that the predecessor corporation was the true tort-feasor. Conversely, the successor corporation would argue that its lesser wealth is more relevant in that case because it determines the current ability to pay the punitive damages award. Thus, the same policy arguments being advanced by Wachovia and B. Levy would apply with equal force if the successor corporation's wealth was less than the net worth of the predecessor corporation.

Wachovia has not cited any case law which has precluded evidence of a successor corporation's value in a punitive damages case involving the conduct of a predecessor corporation. B. Levy's punitive damages complaint was filed against Corestates six months prior to its acquisition by First Union and four years before the Wachovia-First Union merger. Because Wachovia recognized that it would be liable under the federal Bank Merger Act for any punitive damages recovered by B.

Levy in this litigation, it was foreseeable to Wachovia at the time that it acquired Corestates' assets and liabilities that its own wealth would be relevant in this matter. Accordingly, for the reasons set forth above, the wealth of Wachovia and Corestates is relevant under Pa.R.E. 401.

Counsel for the parties will be entitled to argue to the jury that either the net worth of Corestates or Wachovia is the more appropriate factor to be considered when assessing "the wealth of the defendant." In accordance with Pa. SSJI (Civ.) 14.02 (2nd ed.), the jury will be instructed that "[t]he amount of punitive damages awarded must not be the result of passion or prejudice against the defendant on the part of the jury." The jury will also be charged that a punitive damages award in Pennsylvania must not be "the product of arbitrariness or unfettered discretion." *Hollock, supra,* 842 A.2d at 419 (quoting *Shiner v. Moriarty,* 706 A.2d 1228, 1241 (Pa. Super. 1998)). Defense counsel's policy arguments and the instructions on the law should nullify any alleged danger of unfair prejudice from the introduction of Wachovia's net worth. Hence, relevant evidence of Wachovia's wealth is not outweighed by the danger of unfair prejudice, and the defendant's "motion to limit evidence on punitive damages" will be denied.

## ORDER

And now, May 6, 2005, upon consideration of "defendant's motion to limit evidence on punitive damages," the memoranda of law submitted by the parties and the oral argument of counsel, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that defendant's motion to

limit evidence on punitive damages is denied and that the jury will be permitted to hear evidence of the wealth or net worth of both Wachovia Bank N.A. in 2005 and Corestates Bank N.A. in 1995-1996.