DECISION
Davol Inc. and C.R. Bard Inc. ("Defendants") move to dismiss the complaint of William Blouin ("Mr. Blouin") and Donna Blouin (collectively "Plaintiffs") pursuant to R.I. Super. Civ. P. 12(b)(6). Plaintiffs object to the motion.
 I Facts and Travel
On December 19, 2007, Plaintiffs filed a complaint in this Court, alleging that Mr. Blouin had been severely injured by the defective and dangerous condition of a Kugel Mesh Patch ("Kugel Patch") designed, manufactured, and distributed by Defendants. Mr. Blouin had a hernia repair on November 18, 1999. A Kugel Patch, then a product of Surgical Sense, Inc. ("Surgical Sense") was implanted. The Kugel Patch used in that operation was comprised of a segment of mesh held in a round or oval shape by a "memory recoil ring." The "memory recoil ring" is a plastic coil ring designed to aid in the deployment of the polypropylene mesh hernia patch. Defendants acquired the Kugel Patch product line from Surgical Sense in January 2000. In 2004, Mr. Blouin suffered severe chronic abdominal pain for which he was hospitalized. Mr. *Page 2 
Blouin underwent exploratory abdominal surgery on April 1, 2004. During that surgery, the operating physician discovered that the mesh of the Kugel Patch had folded on itself and presented as a mass in the peritoneal space. The folded mesh pushed against the abdominal walls and structures, and closed an area within the peritoneum that is usually open in a healthy abdomen. The operating surgeon explanted the Kugel Patch. Mr. Blouin endured a lengthy and painful recovery period.
Plaintiffs contend that Mr. Blouin's injuries were the result of a dangerous defect in Defendants' product. Plaintiffs further contend that Defendants conducted post market design research in 2002, which resulted in unfavorable comments and complaints from physicians using the product. Plaintiffs allege that Defendants either fraudulently concealed these results or negligently failed to monitor them. Plaintiffs claim that Defendants uncovered a serious design defect in the memory recoil ring of the Kugel Patch no later than September 2004, and withheld knowledge of this defect until 2005. In 2005, Defendants initiated a partial distribution hold, recalled several specific designs of the Kugel Patch,[1] and notified the FDA and the public of the severity of potential complications with its products. Defendants continued to recall various sizes and designs of their products in 2006 and 2007. The product used to repair Mr. Blouin's hernia was not one of the specific products recalled. Plaintiffs contend, however, that Mr. Blouin suffered symptoms and conditions that were very similar to those listed in the Defendants' recall notices.[2] Plaintiffs' complaint alleges negligence, strict product liability, *Page 3 
negligent infliction of emotional distress, intentional infliction of emotional distress, breach of implied warranty, failure to warn, and fraud.
Defendants have filed the instant motion to dismiss, contending that Plaintiffs' action is untimely under G.L. 1956 § 9-1-14(b). Defendants aver that Plaintiffs knew or should have known of Mr. Blouin's injuries at the time of his explant surgery in April 2004, when his physician noted that the ring had folded on itself. Defendants contend that the three-year time limit imposed by the statute of limitations began to run on April 1, 2004, and that Plaintiffs' claim is time barred, as they did not commence this action until December 2007.
In addition to their statute of limitations argument, Defendants further contend that Plaintiffs will be unable to prove proximate causation. Defendants assert that Mr. Blouin's Kugel Patch was implanted in 1999 — a year before Defendants acquired the Kugel Patch product line from Surgical Sense. Arguing that they never assumed product liability for the assets attained from Surgical Sense, Defendants aver that they cannot be held liable for injury caused by a product that they could not have manufactured, designed, or distributed in 1999.
Plaintiffs oppose the motion to dismiss on the grounds that they were not aware either that the Kugel Patch was dangerously defective, or that the defect caused Mr. Blouin's injury until after Defendants had informed the FDA and the public of the defective condition in 2005. Plaintiffs argue that it was impossible to connect Mr. Blouin's injury to the product's design defect before the Defendants' initial recall in 2005. They contend that the three-year statute of limitations was, therefore, tolled at least until this point. Plaintiffs assert that a 2006 FDA report noted that ring breaks were only one of several possible defects with the Kugel Patch, and because Mr. Blouin's ring folded but did not break, Plaintiffs could not know that his injury was the result of a Kugel Patch defect until after this 2006 report. Plaintiffs additionally contend that *Page 4 
their allegations of fraud against Defendants tolls the statute of limitation under G.L. 1956 § 9-1-20. They argue that they have presented factual allegations that Defendants concealed the existence of the defect — and therefore Plaintiffs' cause of action — until either 2005 or 2006, and, therefore, Plaintiffs' 2007 complaint was timely.
Plaintiffs further oppose Defendants' argument regarding proximate cause. Plaintiffs acknowledge the general rule protecting a company from liability when it purchases the assets of another company. However, Plaintiffs argue that Defendants' purchase of the Kugel Patch line of products from Surgical Sense falls within either the "mere continuation" or "de facto merger" exceptions to the general successor-in-interest rule, resulting in Defendants' liability for the Kugel Patch defect.
 II Standard of Review
"When ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a [non-movant's] favor." Toste FarmCorp. v. Hadbury, Inc., 798 A.2d 901, 905 (R.I. 2002) (citations omitted). The standard is lenient to the plaintiff, and "[n]o complaint will be deemed insufficient unless it is clear beyond a reasonable doubt that the complainant will be unable to establish his [or her] right to relief under any set of facts which might be proved in support of his [or her] claim." Brough v. Foley, 572 A.2d 63, 68 (R.I. 1990) (citingBragg v. Warwick Shoppers World, 102 R.I. 8, 12, 227 A.2d 582, 584 (R.I. 1967)). It is well-settled that a complaint is not insufficient unless the face of the complaint reveals "some insuperable bar to relief."Hulslander v. Murphy, 633 A.2d 263 (R.I. 1993); Goldstein v. RhodeIsland Hosp. Trust Nat'l Bank, 110 R.I. 580, 586, 296 A.2d 112, 115
(R.I. 1972). If in viewing the four corners of the complaint, the trial justice finds that the dates included show the action to be untimely, the statute of limitations *Page 5 
may present such a bar to relief. See Martin v. Howard, 784 A.2d 291,299 (R.I. 2001). However, the "application of the statute of limitations is a matter of law for the trial justice to determine." Ashey v.Kupchan, 618 A.2d 1268, 1270 (R.I. 1993).
 III Analysis
Defendants have presented two distinct arguments to support their motion to dismiss: 1) Plaintiffs are barred from bringing this cause of action under the statute of limitations, and 2) Plaintiffs' claim fails to properly allege proximate cause; Defendants' manufacture, production and distribution of the Kugel Patch initiated after Mr. Blouin's implant in 1999, and Defendants did not assume their predecessor company's liability.
 A Statute of Limitations
This Court has addressed the application of the statute of limitations in similar Kugel Patch product liability cases. See Shearier v. Davol,Inc., 2007 R.I. Super. LEXIS 166, *6-8 (R.I.Super.Ct. 2007);Stradtner v. Davol, Inc., 2007 R.I. Super. LEXIS 164, *5-7 (R.I.Super.Ct. 2007). In deciding those dispositive motions, this Court discussed the application of § 9-1-14(b) and § 9-1-20, and will reiterate that analysis here. See id.
Under § 9-1-14(b), causes of action brought for personal injury must be "commenced and sued within three (3) years next after the cause of action shall accrue, and not after." The time of accrual under the rule has been interpreted in some product liability cases to be the time of injury. See e.g. Renaud v. Sigma-Aldrich Corp., 662 A.2d 711, 714 (R.I. 1995) (citations omitted). However, the Rhode Island Supreme Court has adopted the discovery rule, which states, "the statute of limitations does not begin to run until the plaintiff `discovers, or with reasonable diligence should have discovered, the wrongful conduct. . . .'"Supreme Bakery, Inc. *Page 6 v. Bagley, 742 A.2d 1202, 1204 (R.I. 2000) (citations omitted); see alsoWilkinson v. Harrington, 104 R.I. 224, 233, 243 A.2d 745, 753 (1968) (first applying the discovery rule in medical malpractice cases). The discovery rule has been applied to various types of personal injury actions and is designed to give the plaintiff the reasonable opportunity to "become cognizant of the injury and its cause before the statute of limitations begins to run." Anthony v. Abbott Laboratories, 490 A.2d 43,45 (R.I. 1985); see also O'Coin v. Woonsocket Inst. Trust Co.,535 A.2d 1263, 1266 (R.I. 1988) (noting the types of actions where the rule has been held to apply).
The discovery rule was applied specifically to product liability cases in the Rhode Island Supreme Court's decision, Anthony v. AbbottLaboratories, 490 A.2d 43, 46 (R.I. 1985). Although this Court is mindful that the decision in Anthony has been narrowly interpreted, the Court is persuaded that it applies here. See Benner v. J.H. Lynch Sons, 641 A.2d 332, 337 (R.I. 1994). After Anthony, and the subsequent decisions which limit its holding, the discovery rule applies "in a drug product-liability action where the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing by the manufacturer occur at different points in time." Benner, 641 A.2d at 337
(citing Anthony, 490 A.2d at 46).
In this motion to dismiss, this Court must accept as true Plaintiffs' allegation that Defendants failed to disclose the design defect in the Kugel Patch until 2005 and that information relating Mr. Blouin's symptoms resulting from this design defect was not available until the FDA report released in 2006. Toste Farm Corp., 798 A.2d at 905. Accepting these facts as true, Plaintiffs could not reasonably have known that the design defect in the Kugel Patch caused Mr. Blouin's injury until 2006, approximately two years after the injury occurred. *Page 7 
Defendants contend that this case substantially differs fromShearier and Stradner. They note that the memory recoil ring on Mr. Blouin's Kugel Patch folded rather than broke, and it was not among the products recalled between 2005 and 2007. This Court finds, however, that these factual distinctions serve only to strengthen Mr. Blouin's case. Applying the standard of review, this Court accepted that the injured parties in Shearier and Stradner — who had precisely the symptoms and conditions for which the Kugel Patch was deemed defective and who had used products that were among those recalled — could not have reasonably been aware that a design defect was the cause of their injury until Defendants' recall in 2005. See Shearier, 2007 R.I. Super. LEXIS 166, *6-8; Stradtner, 2007 R.I. Super. LEXIS 164, *5-7; see also Guilano v.Pastina, 793 A.2d 1035, 1036 (R.I. 2002) (standard of review for a motion to dismiss); Delta Airlines, Inc. v. Neary, 785 A.2d 1123, 1126
(R.I. 2001) (standard of review for a motion for summary judgment). Here, Mr. Blouin alleges that the product implanted in his abdomen did not break and was not recalled in 2005. He further alleges that the connection between conditions other than ring breakage and the design defect of the Kugel Patch were not discoverable until the release of the FDA's report in 2006. Taking these allegations as true, it would be illogical to assume that Plaintiffs, upon Mr. Blouin's injury in 2004, would or should have known that his Kugel Patch folded over and amassed as a result of a design defect, rather than any other of the myriad possible causes. Without this release of information, Plaintiffs could not have been cognizant of the fact that a product defect caused Mr. Blouin's injury. See Anthony, 490 A.2d at 45.
Under the standard of review, this Court must also accept as true the Plaintiffs' allegation of fraudulent concealment. See Guiliano,793 A.2d at 1036. Plaintiffs have pled that Defendants knew or should have known of the Kugel Patch's design defect, that they delayed release of that *Page 8 
information for several years, that they misrepresented the product as safe for use, and that this misrepresentation effectively concealed the design defect that caused Mr. Blouin's injury. Taking Plaintiffs' claim of fraud as true, the statute of limitations should be tolled under § 9-1-20. The statute states:
 "If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence." Section 9-1-20.
"In order to demonstrate that there has been fraudulent concealment on the part of a defendant, a plaintiff must show: (1) that the defendant made an actual misrepresentation of fact; and (2) that, in making such misrepresentation, the defendant fraudulently concealed the existence of plaintiff's causes of action." Ryan v. Roman Catholic Bishop,941 A.2d 174, 182 (R.I. 2008). Here, Plaintiffs have sufficiently alleged actual misrepresentation and concealment on the part of the Defendants.See Renaud v. Sigma-Aldrich Corp., 662 A.2d 711, 714 (R.I. 1995) (finding that "[i]n order to toll the running of the statute of limitations . . . there would have to be a showing that . . . the party asserting the statute-of-limitations defense attempted by fraud or misrepresentation to conceal the existence of the cause of action") (citing Benner v. J.H. Lynch Sons, Inc., 641 A.2d 332, 337-38 (R.I. 1994)). Plaintiffs have alleged fraud and have indicated facts that, if proven, would support their claim. See Bragg, 102 R.I. at 12,227 A.2d at 584. If taken as true, Plaintiffs' allegations would result in a tolling of the statute of limitations under § 9-1-20. See Renaud,662 A.2d at 714. Therefore, the statute of limitations does not present an insuperable bar to Plaintiffs' recovery. Hulslander, 633 A.2d 263 (R.I. 1993). *Page 9 
 B Successor Liability[3]
Defendants aver that should this Court find Plaintiffs' suit timely, the claim should nonetheless be dismissed for failure to establish proximate cause. Defendants contend that the Kugel Patch implanted in Mr. Blouin's abdomen was manufactured, designed and distributed during or before 1999. Since Defendants did not purchase the Kugel Patch product line from Surgical Sense until 2000, they argue that they could not have been directly liable for the product defect that injured Mr. Blouin.
Both parties agree that the general rule provides that a transferee corporation ordinarily will not be held liable for the debts of the transferor corporation merely because an asset transfer has occurred.H.J. Baker Bro. v. Orgonics, Inc., 554 A.2d 196, 205 (R.I. 1989); 10 Fletcher, Corporations § 4880 at 315. Plaintiffs contend, however, that liability is imputed by law because Defendants were successors in interest to Surgical Sense, and Defendants' production of the Kugel Patch constituted either a "mere continuation" of the business, or the transaction amounted to a "de facto merger."[4] See Ed Peters JewelryCo. v. C J Jewelry Co., 124 F.3d 252, 266 (1st Cir. 1997) (noting that successor liability is an equitable doctrine that exists to prevent the *Page 10 
evasion of valid claims that may result from rigid adherence to the separateness of corporations rule).
The Rhode Island Supreme Court has found that the "mere continuation" theory is highly dependent upon the facts and circumstances of a particular case, and applies in a situation where the new company is simply a reorganization or continuation of the former company. H.J.Baker Bro. v. Orgonics, Inc., 554 A.2d 196, 205 (R.I. 1989). In making this determination, the Court in H.J. Baker recommended several factors for consideration, including whether
 "(1) there is a transfer of corporate assets; (2) there is less than adequate consideration; (3) the new company continues the business of the transferor; (4) both companies have at least one common officer or director who is instrumental in the transfer; and (5) the transfer renders the transferor incapable of paying its creditors because it is dissolved either in fact or by law." Id. (citing Jackson v. Diamond T. Trucking Co., 100 N.J. Super. 186, 196, 241 A.2d 471, 477
(1968)).
Additionally, the Court noted other factors such as the common identity of officers, directors, and stockholders, and the continued use of the same office space and service to the same client base. Id. (citingDayton v. Peck, Stow Wilcox Co., 739 F.2d 690, 693 (1st Cir. 1984);Bergman Lefkow Ins. Agency v. Flash Cab Co., 110 Ill. App. 2d 415,432, 249 N.E.2d 729, 737 (1969)).
The Rhode Island Supreme Court has also recognized the "de facto merger" theory for imputing liability on a successor corporation that has purchased the assets of another company and such purchase effectively merges the two. See Douglas v. Bank of New Eng.,566 A.2d 939, 941 (R.I. 1989). Rhode Island follows the law of other New England states on this issue. Id. Under the "de facto merger" theory, the Court must consider the actual substance and effect of an agreement, and not merely the label placed upon it by the parties. See Kleen Laundry andDry Cleaning v. Total Waste Management, 817 F. Supp. 225, 230 (D.N.H. *Page 11 
1993)). Therefore, if the transfer of assets achieves virtually all the results of a merger, the equitable doctrine of "de facto merger" will impute the transferor company's liabilities to the successor company.See id. Although the Rhode Island Supreme Court has not yet expressly established the factors to be considered, other trial courts have found the factors set out in Kleen Laundry and Dry Cleaning v. Total WasteManagement, 817 F. Supp. 225, 230-31 (D.N.H. 1993), to provide helpful guidance on this issue. See Asea Brown Boveri, S.A. v. Alcoa Fujikura,Ltd., 2007 R.I. Super. LEXIS 59 (R.I.Super.Ct. 2007); RichmondReady-Mix ex rel. Accounts Receivable of Atl. Ready-Mix Concrete v. Atl.Concrete Forms, Inc., 2004 R.I. Super. LEXIS 82 (R.I.Super.Ct. 2004). Under this persuasive authority, Courts consider the following factors to determine whether the "de facto merger" exception has been met:
 "1. that there was a continuation of the enterprise of the selling corporation vis a vis a continuation of management, personnel, physical location, assets, and general business operation;
 2. that there is a continuity of shareholders resulting from the purchase of the assets with shares of stock, rather than cash;
 3. that the selling corporation ceases operations, liquidates, or dissolves as soon as possible; and
 4. that the purchasing corporation assumes the obligations of the selling corporation necessary for uninterrupted continuation of business." Kleen Laundry and Dry Cleaning, 817 F. Supp. at 230-31 (quoting In re Acushnet River New Bedford Harbor, 712 F. Supp. 1010, 1015 (U.S. Dist. 1989) (citations omitted)); see also 15 Fletcher, Corporations § 7124.20 at 295 (setting out these same factors).
In the instant matter, Plaintiffs have alleged that there was a transfer of corporate assets in the form of products, trademarks, and other intellectual property related to the Kugel Patch; that Defendants continued the business of Surgical Sense by continuing to market and sell the Kugel Patch products; that directors and officers of Surgical Sense were employed by Defendants; and *Page 12 
that Surgical Sense immediately assumed a new corporate name (WCO Medical Corporation) and voluntarily dissolved less than 26 months after the transfer. Taking these allegations as true, Toste Farm Corp.,798 A.2d at 905, the Plaintiffs have pled facts to satisfy several of the key considerations in determining whether a corporate transfer is a "mere continuation," see H.J. Baker, 554 A.2d at 205, or a "de facto merger." See 15 Fletcher, Corporations § 7124.20 at 295.
Plaintiffs assert that they are unable to plead to the other factors at this time, as discovery is not yet complete. With respect to discovery, the rules are liberal and function in consonance with dispositive motions to define disputed facts and issues.Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151 (1st
Cir. 2006) (citations omitted). Although there may be limits to the amount of time a party can command for pretrial preparation, this Court cannot find that the Plaintiffs in this case, which was filed less than four months ago, have run out of time. See Thibeault v. Square DCo., 960 F.2d 239, 242 (1st Cir. 1992) (finding that a party in a simple products liability case could not claim lack of time for discovery to oppose summary judgment where the case had been pending for two and a half years).
Even assuming, arguendo, that there remained nothing to discover on this issue, the Plaintiffs have alleged enough to survive a motion to dismiss on their "mere continuation" and "de facto merger" theories.See H.J. Baker, 554 A.2d at 205 (clearly noting that the facts and circumstances of the case should be considered as a whole, and, therefore, suggesting that all of the factors need not be met to sustain a claim under the "mere continuation" theory); see also 15 Fletcher,Corporations § 7124.20 at 295 (stating that "[i]t is not necessary that all [the] factors be found for there to be a de facto merger"). Therefore, the issue of proximate cause does not present an insuperable bar to Plaintiffs' recovery. Hulslander, 633 A.2d 263 (R.I. 1993). *Page 13 
 IV Conclusion
The sole function of a motion to dismiss is to test the sufficiency of the complaint. McKenna v. Williams, 874 A.2d 217, 225 (R.I. 2005). If the Plaintiffs are entitled to relief under any conceivable set of facts, the motion to dismiss must be denied. Id. Taking all facts asserted by the Plaintiffs as true, this Court finds that Plaintiffs have alleged a set of facts which show that the statute of limitations does not present an insuperable bar to their recovery. Furthermore, this Court finds that Plaintiffs have sufficiently established proximate cause under the "mere continuation" exception to the separation of corporations rule or under the doctrine of "de facto merger." Accordingly, Defendants' motion to dismiss under Rule 12(b)(6) is denied. Counsel shall prepare the appropriate order for entry.
[1] Plaintiffs noted that the specific types of Kugel Patch recalled were Composix® Kugel Mesh Patches. The Composix® patches contain a specific material that has a smooth lining on one side and a sticky lining on the other. The hernia repair ring at issue in this case did not contain the Composix® material, but it had a similar mesh and "memory recoil ring" construction to those that were recalled.
[2] Defendants listed symptoms such as unexplained or persistent abdominal pain, fever, tenderness at the implant site or other unusual symptoms, and listed conditions including bowel obstruction, perforation or fistula, abdominal wall pain or infection, palpable abdominal wall mass, migration or movement of the ring to the abdominal wall, perineum or intra-abdominal organs as associated with recoil ring breakage.
[3] Defendants assert that New Hampshire law applies to the successor liability claim because Plaintiffs are residents of New Hampshire and there is no indication that the injury — including the implantation and explantation of the Kugel Patch — occurred outside of New Hamphire. Under Rhode Island choice of law principles, the substantive law of the place of personal injury controls. See e.g. Najarian v. Nat'lAmusements, Inc., 768 A.2d 1253, 1255 (R.I. 2001). However, Defendants acknowledge that, given the nature of the motion to dismiss, the application of Rhode Island or New Hampshire law will have no substantive impact on the outcome of this motion. Therefore, no conflict of law issue has been presented to this Court, and the Court will not engage in a choice of law analysis for purposes of this motion.Nat'l Refrigeration, Inc. v. Standen Contr. Co., 942 A.2d 968, 973-974
(R.I. 2008) (finding that the trial justice did not err in applying Rhode Island law for a motion to dismiss, even though the ultimate claim was tried under Massachusetts law, because "[a] motion justice need not engage in a choice-of-law analysis when no conflict-of-law issue is presented to the court").
[4] There are four traditional exceptions to the general rule: 1) the corporate seller dissolved and the corporate buyer is so similar to the corporate seller that it is in reality a "mere continuation" of the old corporation, 2) a contract or agreement binds the buyer to assume the seller's tort liabilities, 3) the transaction amounted to a de facto merger, and 4) the transfer was made in bad faith to avoid creditors. 10 Fletcher, Corporations § 4880 at 315-316. *Page 1